IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GPH LOUISVILLE HILLCREEK LLC, *et al.*, | ) CASE NO. 1:24-MC-00033-PAB ) ) |
| Plaintiffs, | ) JUDGE PAMELA A. BARKER ) |
| vs. | ) MAGISTRATE JUDGE ) JONATHAN D. GREENBERG ) |
| REDWOOD HOLDINGS, LLC, *et al.*, | ) ) **REPORT & RECOMMENDATION** |
| Defendants. | |

## I. Procedural History

On April 22, 2025, Judge Barker directed the undersigned to conduct a hearing regarding (1) the Order and Notice of Garnishment to Mass Mutual, during which the parties shall be provided the opportunity to introduce evidence and present argument regarding whether the Mass Mutual life insurance policy at issue is exempt from garnishment and (2) the Order and Notice of Garnishment to Charles Schwab, during which the parties shall be provided the opportunity to introduce evidence and present argument regarding whether the Charles Schwab assets at issue are exempt from garnishment. (Doc. No. 72.)

A hearing regarding the garnishment of the Charles Schwab retirement accounts and Mass Mutual life insurance policy was held on July 23, 2025. (Doc. No. 79.) The parties agreed to release the funds to Charles Schwab for deposit into the account(s) from which they came. (*Id.*) The Court took the exemption of the Mass Mutual life insurance policy under advisement. (*Id.*)

On July 30, 2025, the parties filed a joint stipulation regarding return of the Charles Schwab funds. (Doc. No. 80.) On July 31, 2025, the parties filed an amended joint stipulation regarding return of the Charles Schwab funds. (Doc. No. 81.) On August 1, 2025, the Court issued a Stipulated Order dismissing without prejudice the non-wage garnishment Order issued to Charles Schwab and the Order requiring Charles Schwab to pay amounts into Court in this action, and requiring the Clerk of the Court to return all

1

funds paid into this Court by Charles Schwab in this action for Charles Schwab to place back into the accounts in Eli Gunzburg's name from which such funds were paid. (Doc. No. 82.)

On August 15, 2025, the Court ordered supplemental briefing regarding the limited issue of whether *Huntington National Bank v. Winter*, 2011-Ohio-1751, 2011 WL 1378727 (Ohio Ct. App. Apr. 13, 2011)[1] either allowed or foreclosed garnishment of the Mass Mutual asset in this case. (Doc. No. 83.)

On August 25, 2025, Defendant/Judgment Debtor Eli Gunzburg ("Judgment Debtor" or "Gunzburg") filed a supplemental post-hearing brief as ordered. (Doc. No. 88.)

On August 29, 2025, Plaintiffs/Judgment Creditors ("Judgment Creditors") filed a supplemental post-hearing brief as ordered. (Doc. No. 89.)

On September 4, 2025, Judgment Debtor filed a response to Judgment Creditors' supplemental post-hearing brief. (Doc. No. 91.)

On September 5, 2025, Judgment Creditors filed a response to Judgment Debtor's supplemental post-hearing brief. (Doc. No. 92.)

---

[1] While counsel for Plaintiffs/Judgment Creditors referenced this case to the Court during the hearing as "set[ting] out the law regarding when premiums are paid in fraud of creditors, and it explains that not all or even most of the badges of fraud need to be present" (Doc. No. 84 at PageID# 855), counsel made no mention to the Court that, as Plaintiffs/Judgment Creditors concede in their post-hearing brief (Doc. No. 89 at 2-3), *Winter* forecloses the garnishment of the Mass Mutual life insurance policy "even where premiums are paid in fraud of creditors." (*Id.* at 2.) While Plaintiffs/Judgment Creditors argue that "[t]here is reason to question the holding in *Winter* on this issue" (*id.* at 3), Ohio Rule of Professional Conduct 3.3(a)(2) prohibits an attorney from knowingly failing to disclose adverse authority, which is sanctionable conduct under Federal Rule of Civil Procedure 11. *See Dick's Sporting Goods, Inc. v. Boydston*, No. 2:14–cv–02360–JPM–dkv, 2015 WL 730072, at *4 n.1 (W.D. Tenn. Feb. 19, 2015). At a minimum, had counsel informed the Court that *Winter* forecloses the garnishment of the Mass Mutual life insurance policy "even where premiums are paid in fraud of creditors," the Court could have ordered post-hearing briefing at the time, or taken a recess during the hearing and then allowed argument on the applicability of the case, instead of having to order supplemental briefing once the Court began working on the Report and Recommendation.

## II. Analysis

In his post-hearing brief, Judgment Debtor argues that *Winter* is distinguishable on its facts as to the "badges of fraud," but argues that under *Winter* and *Lakhi v. Meritra Health Care, LLC*, 2025-Ohio-466, his whole life insurance policy is exempt from garnishment. (Doc. No. 88 at 2-5.)

As noted *supra*, Judgment Creditors admit that "*Winter* ultimately concludes that, even where premiums are paid in fraud of creditors, the Court cannot order a judgment debtor to surrender the cash value of the life insurance policies." (Doc. No. 89 at 2-3.) However, Judgment Creditors argue that "[t]here is reason to question the holding of *Winter* on this issue," as "[t]he holding turns on the [c]ourt's interpretation of the phrase 'proceeds' in the statute, which does not define the term," and there is no "Ohio Supreme Court case that finds that 'proceeds' of the policy do not include the current cash surrender value of a whole life policy that is able to be surrendered or against which a loan is able to be taken unless such surrender or loan is voluntary or a result of the policy terms." (*Id.* at 3.) Judgment Creditors cite *In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 937 (6th Cir. 2014) for the proposition that "a federal court sitting in diversity is bound to follow the rulings of the state's highest court and to predict how the state's highest court would interpret a statute if it has not addressed the issue." (Doc. No. 89 at 3.) Judgment Creditors assert that "[a] determination that 'proceeds' includes the current cash surrender value such that a creditor may execute immediately on such cash surrender value makes sense." (*Id.*) Judgment Creditors maintain that "construing the statute as the *Winter* court did actually encourages debtors to take out life insurance policies in fraud of creditors, since it would place such funds outside the hands of creditors for a sustained period" and such a result "is at odds with the clear intent of the statute carving out premiums paid in fraud of creditors from the otherwise exempt nature of life insurance benefits." (*Id.* at 3-4.) However, in the event the Court does follow *Winter*, Judgment Creditors ask that the Court, in part, "confirm[] that the Judgment Creditors have a continuing garnishment lien on the

3

proceeds of the policy, whether they be paid due to the death of Gunzburg, his taking a loan on the policy, or the policy being surrendered pursuant to its terms." (*Id.* at 4.)

Judgment Debtor responds that, as set forth in his post-hearing brief, "the Ohio Supreme Court declined to review the decision in *Winter*," and therefore, *Winter*'s analysis and holding are controlling law. (Doc. No. 91 at 3.) In addition, Judgment Debtor argues that an order from this Court "confirming" that Judgment Creditors have a "continuing garnishment lien on the proceeds of the policy" would be contrary to Ohio law, as Ohio only allows "'continuing garnishments' for wage garnishments." (*Id.*) Judgment Debtor asserts that there is no statute or case law that provides for a non-wage continuing garnishment. (*Id.*) Judgment Debtor also disputes that the life insurance proceeds lose their exempt status upon his death. (*Id.*) However, Judgment Debtor concedes that taking out a loan against the policy other than for the purpose of paying the policy premiums and that voluntary surrender of the life insurance policy would remove the cash value of the life insurance policy from the exemption under Ohio Rev. Code 3911.10. (*Id.* at 4.)

Judgment Creditors respond to Judgment Debtor's argument regarding continuing garnishments as follows:

> Finally, Gunzburg's arguments against granting Judgment Creditors a lien on proceeds in the amount of the premiums paid in fraud of creditors and interest thereon fall short. Such a lien is precisely in line with the statute, which carves out such premium amounts and interest from the exemption from collection and provides that such premium and interest amounts "shall inure" to the benefit of creditors from the proceeds of the life insurance policies. Ohio Rev. Code § 3911.10. Gunzburg's briefing and arguments make no effort to grapple with this statutory language at all, much less does Gunzburg explain how a lien on proceeds (whenever they are paid out) would be inconsistent with the statutory directive that the premium amounts paid in fraud of creditors "inure" to the benefit of creditors.

(Doc. No. 92 at 2-3.)

In *Winter*, following a hearing, a magistrate found that the exemption in Ohio Rev. Code § 3911.10 did not apply because Winter had paid his premiums to defraud his creditors, and therefore the banks could execute on the cash value of the life insurance policies. 2011 WL 1378727 at *1. Winter appealed, arguing

4

in part that there was insufficient evidence of fraud and that even if he had paid his premiums to defraud his creditors, "the Banks were still prevented from garnishing the cash value of the policies until the policies had matured, which would only occur upon his death or when he voluntarily accepts the cash surrender value of the policies." *Id.* at **2-3. The Ohio appellate court found that there was sufficient evidence of fraud in the record. *Id.* at *3. However, the appellate court held that "[b]ecause the beneficiaries of the life insurance policies were Winter's wife and children, and because the life insurance policies had not reached maturity…the exemption to the execution on life insurance policies contained in R.C. 3911.10 was applicable and that the trial court erred by permitting the Banks to execute on Winter's whole-life insurance policies." *Id.* at *1.

The appellate court found "it was constrained to agree with Winter" that the Banks were prevented from garnishing the cash value of the policies until the policies had matured. *Id.* at *3. The appellate court explained:

> {¶ 24} R.C. 3911.10 states in relevant part, "All contracts of life or endowment insurance or annuities upon the life of any person * * * which may hereafter mature and which have been taken out for the benefit of, or made payable by change of beneficiary * * * to the spouse or children * * * for the benefit of such spouse [or] children * * * shall be held, together with the proceeds or avails of such contracts * * * free from all claims of the creditors of such insured person. * * * Subject to the statute of limitations, the amount of any premium upon such contracts * * * paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the contracts."
>
> {¶ 25} R.C. 3911.10 limits a creditor's recovery of fraudulently paid premiums to the "proceeds" of the life-insurance contract. The few courts who have considered R.C. 3911.10, or its former version, have held that the proceeds of the contract come into existence when the contract matures—either at the death of the insured or when the insured voluntarily accepts the cash surrender value of the contract.
>
> {¶ 26} In *Menke,* the court interpreted the former version of R.C. 3911.10, which is substantially similar to the current version, and it stated that it was the legislature's intent on "life insurance policies to limit the recovery of premiums paid in fraud of creditors to the funds arising upon the maturity of the contract [and that] this fund may arise by the insured voluntarily accepting the cash surrender value of the policies or upon the death of the insured."[] Further, in *Doethlaff v. Penn Mut. Life Ins. Co.,*[] the Sixth Circuit Court of Appeals held that the former

5

version of R.C. 3911.10 did not authorize the court to order a debtor who had filed for bankruptcy and had been accused of paying his premiums in fraud of his creditors to accept the cash surrender value of his life insurance policy so that he could repay his creditors. Instead, the court held that the creditors could only be paid from the proceeds of the policy and that the policy did not have any "proceeds" until it matured, which would occur when the debtor died.[]

{¶ 27} Given these cases and the fact that R.C. 3911.10 is an exemption statute that is to be construed in favor of the debtor,[] we hold that the trial court erred by ordering Winter to surrender the cash value of his life insurance policies to satisfy the Banks' judgments against him. If Winter had voluntarily cashed in the policies or had taken a loan against the cash value of the policies, that money would have been subject to execution by the Banks.[] But that did not happen here, at least not on the record before us. Accordingly, the third assignment of error is sustained.

*Id.* at **3-4 (footnotes omitted). As Judgment Debtor points out, the Supreme Court of Ohio declined to review the decision in *Winter*. 2011-Ohio-5129, 954 N.E.2d 662 (Table).

Another Ohio appellate court recently affirmed the *Winter* court's interpretation of Ohio Rev. Code § 3911.10. *Lakhi v. Meritra Health Care, LLC*, 2025-Ohio-466, 2025 WL 488392 (Ohio Ct. App. Feb. 13, 2025). In *Lakhi*, the magistrate found Ohio Rev. Code §§ 2329.66(A)(6)(b) and 3911.10 "exempted from garnishment each appellee's interest in his or her life insurance policy, including the interest in the cash value of each policy." *Id.* at *2. On appeal, appellant argued in part that Ohio Rev. Code § 3911.10 "does not provide an exemption from garnishment of a life insurance policy in cases where both the insured and the beneficiary are debtors of the same creditor." *Id.* The appellate court found as follows:

{¶ 13} Although appellant seizes on the outcome of *In re Schramm*, she ignores how that case involved the proceeds of a life insurance policy and the claims of creditors of the policy's beneficiary. Appellant's reliance on *In re Schramm* is unavailing because, here, appellees are the insured persons, not the beneficiaries. Furthermore, as the life insurance policies now before us have yet to mature, there are no proceeds for appellant to garnish. *See Huntington Natl. Bank v. Winter*, 2011-Ohio-1751, ¶ 25 (1st Dist.) ("[T]he proceeds of the [life insurance] contract come into existence when the contract matures—either at the death of the insured or when the insured voluntarily accepts the cash surrender value of the contract."). The factual context of *In re Schramm* is thus largely irreconcilable with the present case.

{¶ 14} Appellant next disputed the holding of *In re Bess*, 40 B.R. 509 (Bankr. S.D. Ohio 1984), that, in regard to R.C. 3911.10, "[t]he legislature ... has not made an exception in its insurance exemption for joint debtors." *In re Bess* at 511. Appellant, however, cites no textual support for her preferred reading of R.C. 3911.10, and the

6

> statute provides no explicit exception for joint debtors. If the Ohio legislature wanted to make such an exception, it would have said so. Regardless of this court's policy preferences, the text of R.C. 3911.10 is not amenable to more than one interpretation. We are therefore obligated to apply this unambiguous law as it is written. Accordingly, R.C. 3911.10 prohibits appellant from garnishing the cash values of appellees' life insurance policies. The trial court did not err as to appellant's first issue.

*Id.* at *3.

The *Lakhi* court found Ohio Rev. Code § 3911.10 "unambiguous" and "not amenable to more than one interpretation." 2025 WL 488392 at *3. The Supreme Court of Ohio declined to accept the appeal of the decision in *Winter*, and two different state appellate courts over the course of almost 14 years came to the same conclusion regarding interpretation of "proceeds" under Ohio Rev. Code § 3911.10. Therefore, the undersigned finds that, regardless of whether Judgment Debtor paid his premiums of the MassMutual life insurance policy to defraud his creditors, under *Winter* and *Lakhi*, because the beneficiary of the policy was Gunzburg's wife (Doc. No. 84 at PageID# 858, 861) and because the life insurance policy has not reached maturity, the exemption to the execution on life insurance policies contained in Ohio Rev. Code § 3911.10 applies. Therefore, the undersigned recommends the Court enter an Order directing the Clerk of Court to return the life insurance proceeds to Mass Mutual and directing Mass Mutual to restore Gunzburg's whole life insurance policy.

Despite Judgment Creditors' assertion that Judgment Debtor "make[s] no effort to grapple with [the] statutory language at all, much less…explain how a [continuing] lien on proceeds (whenever they are paid out) would be inconsistent with" Ohio Rev. Code § 3911.10 (Doc. No. 92 at 2-3), it is Judgment Creditors who fail to respond in any meaningful way to Judgment Debtor's argument and authority that a non-wage continuing garnishment is contrary to Ohio law (Doc. No. 91 at 3-4). (*See* Doc. No. 92 at 2-3.) As Judgment Debtor points out, Ohio Rev. Code § 2716.07 only allows "a continuous order of garnishment of personal earnings." Judgment Creditors cite no authority to support a non-wage continuing garnishment, nor could the Court find any such authority. Therefore, the undersigned further recommends the Court decline

7

Judgment Creditors' request to issue an order "confirm[ing] that the Judgment Creditors have a continuing garnishment lien on the proceeds of the policy.

    IT IS SO RECOMMENDED.


Date: October 16, 2025                       *s/ Jonathan Greenberg*
                                                 Jonathan D. Greenberg
                                                 United States Magistrate Judge

**OBJECTIONS**

    **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**