IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GPH LOUISVILLE HILLCREEK LLC, *et al.*, | ) | CASE NO. 1:24-MC-00033-PAB |
| | ) | |
| Plaintiffs, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| REDWOOD HOLDINGS, LLC, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | | |

On August 21, 2025, Judge Barker referred Judgment Debtor's Motion to Quash Subpoena Issued to Eli M. Gunzburg Irrevocable Trust 2010, Eli M. Gunzburg Irrevocable Trust 2017, and Frank Gunzburg 2015 Succession Trust and for Protective Order (hereinafter collectively "the Trusts") (Doc. No. 85) and Motion to Quash Subpoena Issued to Charles Schwab & Co., Inc. and for Protective Order (Doc. No. 86) to the undersigned for disposition. (Doc. No. 87.)

For the reasons set forth in this Report and Recommendation,[1] the undersigned recommends that the Court GRANT IN PART and DENY IN PART the Motion to Quash the subpoena to the Trusts and for Protective Order (Doc. No. 85) as follows. Given Judgment Debtor's failure to respond to the discovery requests in the Kentucky action, Judgment Debtor has waived his right to object to the relevance of the discovery requests contained in the subpoena. The undersigned recommends the Court find that even if Judgment Debtor had not waived his relevancy objections, the requested information in the subpoena is

---

[1] The pending Motions to Quash have been referred to the undersigned disposition pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Doc. No. 87.) "However, because these are post judgment matters this Court's jurisdiction is limited to a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)." *Wells Fargo Bank, N.A. v. MPC Investors, LLC*, Case No: 09-11249, 2010 WL 3259371, at *1 (E.D. Mich. Aug. 2, 2010) (citing *United States v. Tyson*, 265 F. Supp. 2d 788, 789 (E.D. Mich. 2003)), *report and recommendation adopted by* 2011 WL 13552576 (E.D. Mich. Feb. 3, 2011).

relevant under the broad scope of post-judgment discovery. The undersigned further recommends that the lack of a date limitation makes the discovery requests in the subpoena overbroad, and that the Court should limit the discovery requests in the subpoena to the previous seven years, allowing for the passage of time between October 2024 and now. However, the undersigned further recommends such information need not be produced until a protective order is in place given the confidentiality of the information.

The undersigned recommends that the Court DENY the Motion to Quash the subpoena to Charles Schwab (Doc. No. 86).

## I. Procedural History

The following case summary is not meant to be exhaustive and is limited to the information relevant to the pending Motions to Quash and for Protective Orders at Doc. Nos. 85 and 86.

On January 25, 2024, District Judge Rebecca Grady Jennings of the United States District Court for the Western District of Kentucky issued Findings of Fact & Conclusions of Law after conducting a seven-day bench trial in the matter of *GPH Louisville Hillcreek LLC, et al. v. Redwood Holdings, LLC, et al.,* Case No. 3:21-cv-63 (W.D. Ky.) ("the Kentucky action"). (Doc. No. 3.) The total principal amount awarded to Judgment Creditors in the Kentucky action was $1,059,523.45. (*See* Doc. Nos. 1, 3.)

On July 10, 2024, Judgment Creditors filed a Certificate of Judgment for Registration in the Northern District of Ohio, attaching Judge Jennings' May 1, 2024 Memorandum Opinion & Order. (Doc. Nos. 1, 1-1.) Judgment Creditors later filed a Notice attaching Judge Jennings' Findings of Fact and Conclusions of Law. (Doc. Nos. 2, 3.)

On July 25, 2024, Judgment Creditors filed Requests for Writs of Non-Wage Garnishment pursuant to Ohio Revised Code §§ 2716.11 and 2716.13 to nine (9) third-party garnishees, including Charles Schwab & Co, Inc. (hereinafter "Charles Schwab"). (Doc. Nos. 4-12.)

On July 25, 2024, Judge Barker referred the instant action to the undersigned for general processing of the Requests for Writs of Non-Wage Garnishment, as well as any additional Requests or Applications for

garnishment that may be filed, and the setting of a hearing, if necessary. (Doc. No. 13.) On August 1, 2024, the undersigned issued Orders and Notices of Garnishment for all nine (9) third party garnishees, including Charles Schwab. (Doc. Nos. 14, 16, 18, 20, 22, 24, 26, 28, 30.)

On August 12, 2024, the Court received a formal response from Charles Schwab which identified the following accounts held by Gunzburg:

> 1. Schwab account no. XXXX-5062 is an Individual Account in the name of Eli M Gunzburg and contains $352.32 in cash.
>
> 2. Schwab account no. XXXX-7108 is a Simplified Employee Plan Individual Retirement Account in the name of Eli M Gunzburg and contains $3,648.77 in cash. This account has been restricted up to the amount of the judgment minus $400.00 due to an automatic State exemption.
>
> 3. Schwab maintains a Roth Contributory Individual Retirement Account in the name Eli M Gunzburg. This account is believed to be exempt from the Order and Notice of Garnishment, and therefore, has NOT been restricted.

(Doc. No. 32.) Charles Schwab indicated that the accounts ending in 5062 and 7108 "have been and will remain restricted up to the amount of the judgment until we receive further instructions from the court…." (*Id.*)

On December 4, 2024, the Court ordered Charles Schwab to pay the amount over $400, other than personal earnings, of the judgment debtor under Schwab's control and in the Schwab's possession, to the Clerk of Court no later than December 16, 2024. (Doc. No. 56.)

On December 12, 2024, Charles Schwab paid $352.32 and $3,252.76 to the Clerk of Court as ordered.

On April 22, 2025, Judge Barker directed the undersigned to conduct a hearing regarding, in part, the Order and Notice of Garnishment to Charles Schwab, during which the parties would be provided the opportunity to introduce evidence and present argument regarding whether the Charles Schwab assets at issue were exempt from garnishment. (Doc. No. 72.)

3

A hearing regarding, in part, the garnishment of the Charles Schwab retirement accounts and Mass Mutual life insurance policy was held on July 23, 2025. (Doc. No. 79.) During the hearing, the parties agreed to release the funds to Charles Schwab for deposit into the account(s) from which they came. (*Id.*)

On July 30, 2025, the parties filed a joint stipulation regarding the return of the Charles Schwab funds. (Doc. No. 80.) On July 31, 2025, the parties filed an amended joint stipulation regarding the return of the Charles Schwab funds. (Doc. No. 81.) On August 1, 2025, the Court issued a Stipulated Order dismissing without prejudice the non-wage garnishment Order issued to Charles Schwab and the Order requiring Charles Schwab to pay amounts into the Court in this action, and requiring the Clerk of the Court to return all funds paid into this Court by Charles Schwab to Charles Schwab to place back into the accounts in Eli Gunzburg's name from which such funds were paid. (Doc. No. 82.)

On August 20, 2025, Judgment Debtor filed a Motion to Quash Subpoena Issued to Eli M. Gunzburg Irrevocable Trust 2010, Eli M. Gunzburg Irrevocable Trust 2017, and Frank Gunzburg 2015 Succession Trust and for Protective Order (hereinafter collectively "the Trusts"). (Doc. No. 85.) That same day, Judgment Debtor filed a Motion to Quash Subpoena Issued to Charles Schwab & Co., Inc. and for Protective Order. (Doc. No. 86.)

On August 21, 2025, Judge Barker referred Judgment Debtor's Motions to Quash to the undersigned. (Doc. No. 87.)

On September 10, 2025, Judgment Creditors filed a response in opposition to the Motions to Quash and for Protective Orders. (Doc. No. 93.)

## II.        Analysis

### A.        Standing

As Judgment Debtor acknowledges, "[i]t is generally recognized that a party does not have the right to object to a subpoena issued to a non-party." (Doc. No. 85 at 2) (citing *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018)). However, "[a]n exception exists . . . when the party claims

a personal right or privilege with respect to the documents being sought." (*Id.*) Judgment Debtor asserts that he has a relationship with each of the Trusts named in the subpoena at issue, either as a settlor or a beneficiary, and that "[t]his relationship gives him a personal right in the documents sought by Plaintiffs since the documents contain personal and private information." (*Id.*) (citing *Gangale v. Coyne*, 183 N.E.3d 1245, 2022-Ohio-196, ¶ 20 (Ohio Ct. App. 2022); *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 WL 2974083 (N.D. Ill. Apr. 17, 2023); Fed. R. Civ. P. 45(d)(3)(b)). Likewise, Judgment Debtor maintains he has standing to challenge the subpoena issued to Charles Schwab, as "there is no doubt that [Judgment Debtor] has accounts at Schwab" and "[h]is relationship to these accounts gives him a personal right in the documents sought by Plaintiffs" since the documents contain "personal and private information." (Doc. No. 86 at 2-3.)

Judgment Creditors respond that "nowhere does [Judgment Debtor] claim that the documents are privileged or protected from discovery," which is the "only argument that [Judgment Debtor] has standing to raise with respect to the subpoenas." (Doc. No. 93 at 9.) Judgment Creditors argue that since Judgment Debtor "fails to assert that he holds any privilege for the documents sought, and because he does not have standing to raise other arguments, his Motions to Quash should be denied for lack of standing." (*Id.* at 10.)

"'[O]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought.'" *Mann v. Univ. of Cincinnati*, 114 F.3d 1188 (Table), at *4 (6th Cir. 1997) (quoting 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (1995)). Courts have recognized such rights or privileges "with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records." *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, Case No. 1:11–cv–0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013) (citing *Hackmann v. Auto Owners, Ins.*

*Co.*, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009)).[2]  As the subpoenas at issue request Judgment

Debtor's financial records, the Court finds that Judgment Debtor has standing to seek to quash the subpoenas

to the Trusts and to Charles Schwab.

However, courts within the Sixth Circuit have recognized that even "'where a party's standing may

fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective

order on a third party's behalf.'"  *Whiting v. Trew*, Case No. 3:20-CV-54-TRM-DCP, 2020 WL 6468131,

at *6 (E.D. Tenn. Nov. 3, 2020) (quoting *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018

WL 4328257, at *2 (M.D. Tenn. July 16, 2018); (citing *Callidus Capital Corp. v. FCA Grp.*, No. 14-10484,

2018 WL 1556231, at *3 (E.D. Mich. Mar. 30, 2018) ("'Therefore, this court must consider whether the

subpoenas' requests are overly broad or seek[ ] irrelevant information under the same standards set forth

in Rule 26(b) and as applied to Rule 34 requests for production.'") (additional internal quotation marks

omitted) (additional citation omitted).  As set forth above, Judgment Debtor not only moved to quash the

subpoenas but also moved for protective orders to prevent future discovery of the assets of the Trusts and

the assets with Schwab.  (Doc. Nos. 85-86.)  Therefore, even if Judgment Debtor lacked standing to bring

the Motions to Quash, Judgment Debtor may move for a protective order arguing grounds such as undue

---

[2] *Cf. F.T.C. v. Trudeau*, Case No. 5:12MC35, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012).  In *Trudeau*, the movants "claim[ed] a right to privacy in their financial affairs, including their banking records held by First Merit."  *Id.* at *3.  This Court rejected that argument, noting that "numerous courts, including the Sixth Circuit, have 'rejected the idea there is a general constitutional right of nondisclosure of personal information.' *Jenkins v. Rock Hill Local Sch. Dist.,* 513 F.3d 580, 591 (6th Cir.2008) (no privacy interest in personal financial affairs) (citing *Overstreet v. Lexington–Fayette Urban County Gov't,* 305 F.3d 566, 575 (6th Cir. 2002); *State Farm Mut. Ins. Co. v. Policherla,* No. 08–13939, 2009 WL 2170183, at *3 (E.D. Mich. July 20, 2009)[]]."  *Trudeau*, 2012 WL 5463829, at *3 (footnote omitted).

burden or relevance on the subpoenaed parties' behalf. *See Whiting v. Trew*, 2020 WL 6468131, at *6 (citing *Callidus Capital Corp.*, 2018 WL 1556231, at *3).

Based on the foregoing, the Court will address the substantive arguments Judgment Debtor raises regarding the subpoenas at issue.

**B.     Compliance with Rule 45(a)(4)**

In a footnote in his Motions to Quash, Judgment Debtor states he "would also advise the Court that Plaintiffs failed to serve a copy of the Subpoena and/or hold a scheduling conference on him in violation of Loc.R. 30.1 ('…no***Subpoena can issue prior to a scheduling conference with opposing counsel.')." (Doc. No. 85 at 1 n.1; Doc. No. 86 at 1 n.1.)

In a footnote in their response in opposition to the Motions to Quash, Judgment Creditors assert:

> Although not argued in the main text of the Motions to Quash, Gunzburg includes a footnote in each to "advise the Court" that Plaintiffs did not hold a "scheduling conference" with him, citing to L.R. 30.1. But that Local Rule expressly addresses subpoenas for depositions in order to ensure that the parties coordinate on scheduling depositions. The subpoenas at issue did not seek depositions, only documents. And Fed. R. Civ. P. 45 does not require any sort of preissuance scheduling conference either. It only requires notice of a subpoena for documents be issued to other parties in the matter if the subpoena is issued "before trial," not as part of post-judgment discovery. *See* Fed. R. Civ. P. 45(a)(4). Regardless, Gunzburg filed the Motions to Quash and no documents have been produced to date.

(Doc. No. 93 at 9 n.2).

As Judgment Creditors note, Local Rule 30.1 governs conduct at depositions; as the subpoenas at issue require only the production of documents and not appearance for a deposition, Local Rule 30.1 does not apply.

Rule 45(a)(4) states that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises **before trial**, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."  Fed.

R. Civ. P. 45 (emphasis added). Therefore, by its terms, Rule 45(a)(4)'s notice provision applies only before trial. Since this case is in the post-judgment stage, Rule 45(a)(4)'s notice provision does not apply.

Even assuming, *arguendo*, that Rule 45(a)(4)'s notice provision applies to post-judgment subpoenas, as another court in this circuit has explained:

> The purpose of the prior notice requirement "is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced."

*Automotive Inspection Servs., Inc. v. Flint Auto Auction, Inc.*, No. 06-15100, 2007 WL 3333016, at *3 (E.D. Mich. Nov. 9, 2007) (quoting Fed. R. Civ. P. 45 committee note, 1991 amendments).

In explaining the additional amendments to the rule that occurred in 2013, the committee notes stated:

> Rule 45(a)(4) is added to highlight and slightly modify a notice requirement first included in the rule in 1991. Under the 1991 amendments, Rule 45(b)(1) required prior notice of the service of a "documents only" subpoena to the other parties. Rule 45(b)(1) was clarified in 2007 to specify that this notice must be served before the subpoena is served on the witness.
>
> The Committee has been informed that parties serving subpoenas frequently fail to give the required notice to the other parties. The amendment moves the notice requirement to a new provision in Rule 45(a) and requires that the notice include a copy of the subpoena. The amendments are intended to achieve the original purpose of enabling the other parties to object or to serve a subpoena for additional materials.
>
> Parties desiring access to information produced in response to the subpoena will need to follow up with the party serving it or the person served to obtain such access. The rule does not limit the court's authority to order notice of receipt of produced materials or access to them. The party serving the subpoena should in any event make reasonable provision for prompt access.

Fed. R. Civ. P. 45 committee note, 2013 amendments.

Judgment Debtor makes no argument that the subpoenas should be quashed as a result of Judgment Creditors' failure to comply with Rule 45(a)(4), nor that he has suffered any prejudice as a result. "Courts

in the Sixth Circuit decline to quash subpoenas based on a technical violation of Rule 45(a)(4) where the moving party suffered no prejudice.[] *See, e.g., Sys. Prods. & Solutions, Inc. v. Scramlin*, No. 13-cv-14947, 2014 WL 3894385, at *6 (E.D. Mich. Aug. 8, 2014) (citing *Black v. Kyle-Reno*, No. 1:12-cv-503, 2014 WL 667788, at *2 (S.D. Ohio Feb. 20, 2014)); *Friedberg v. Madison Realty Invs., Inc.*, No. 1:16-mc-0003, 2016 WL 1562948, at *2 (S.D. Ohio Apr. 18, 2016) (citing *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 252 (S.D. Ohio 2011)) ('The Court can move past a technical violation of Rule 45(a)(4) and examine the merits of the matter when the movant has not been prejudiced by the violation.')." *AFT Michigan v. Project Veritas*, Civil Case No. 17-13292, 2022 WL 779784, at *3 (E.D. Mich. Mar. 14, 2022) (footnote omitted). Therefore, even if Rule 45(a)(4) required Judgment Creditors to serve prior notice of the subpoenas on Judgment Debtor, Judgment Creditors' failure to do so does not foreclose consideration of the merits of the subpoenas at issue.

## C.  Substantive Challenges to the Subpoenas

### 1)  Subpoena to the Trusts

Judgment Debtor challenges the subpoena to the Trusts on the grounds that it is overly broad and unduly burdensome, and it seeks irrelevant, confidential information. The Court addresses each of these arguments below, in reverse order.

#### a.  Relevance

Judgment Debtor argues that the Sixth Circuit has applied a "'reasonable relevance standard to subpoenas requesting [] personal financial documents....'" (Doc. No. 85 at 4) (quoting *Doe v. U.S.*, 253 F.3d 256, 270 (6th Cir. 2001)). Judgment Debtor asserts that in order to determine whether the financial records of the Trusts are "'reasonably relevant,' one must ask whether Plaintiffs would be able to reach the Trusts' assets for the purpose of garnishment or attachment. If the assets cannot be touched, then production of the documents would serve no purpose other than to harass the Trusts and, by extension, the Trustee." (Doc. No. 85 at 4-5.) Judgment Debtor maintains that "Ohio law is clear: spendthrift trust assets are not

subject to garnishment or attachment." (*Id.* at 5) (citing *Scott v. Bank One Trust Co., N.A.*, 62 Ohio St.3d 39, 49 (1991); *Domo v. McCarthy*, 66 Ohio St.3d 312 (1993); and *Styer v. Styer,* 2006 WL 319248, 2006-Ohio-606 (Ohio Ct. App. Feb. 13, 2006)).

In a footnote, Judgment Debtor argues further:

> It is anticipated that Plaintiffs may argue that they have the right to investigate for fraudulent transfers between the Trusts and Eli Gunzburg. Such an argument is folly. Ohio R.C. 5816.10(A) provides that Chapter 5816, the Ohio Legacy Trust Act, prevails when a conflict exists between this Chapter and Chapter 1336, Ohio's Uniform Fraudulent Transfer Act. Ohio Rev. Code 581610(A). Additionally, post-judgment discovery cannot be used to seek information for a claim that was never pled in the underlying case. *Insured Advocacy Group, LLC v. Spartan Services Corp.*, 2024 WL 4893580, *3 (S.D.N.Y Nov. 26, 2024). Fraudulent conveyance was not pled in the underlying complaint. See Complaint, attached as Exhibit C for the Court's convenience. To argue that a fraudulent conveyance occurred would require Plaintiffs to file a separate lawsuit. See *Mancz v. McHenry*, 2021 WL 141496, 2021-Ohio-82 (2nd Dist. Jan.15, 2021). Plaintiffs' claim, however, would be time-barred. Ohio Rev. Code 1336.09(C).

(Doc. No. 85 at 5 n.5.)

Judgment Creditors respond that "the information sought in the Subpoenas is the same information that Judgment Creditors previously sought through Discovery Requests directed to Gunzburg." (Doc. No. 93 at 10.) Because Gunzburg failed to respond to those discovery requests, Judgment Creditors argue that Gunzburg has "waived any objections to the Discovery Requests, including any objection that the information sought in them was irrelevant or not subject to discovery." (*Id.*) (citing Doc. No. 93-7 at 3.) Judgment Creditors maintain, "Having waived his right to dispute the propriety of the discovery when presented the opportunity directly, Gunzburg should not be heard to argue now that the same information and documents are protected from discovery when sought through Subpoenas due to his failure to comply with the Order of the Western District of Kentucky." (Doc. No. 93 at 10.) Judgment Creditors assert that:

> Because the Subpoenas seek information and documents covered by the Discovery Requests, and because the Western District of Kentucky has already considered the Discovery Requests and concluded that they were permissible under Rule 69, Gunzburg's belated objections to discovery of the information should be rejected in accordance with the comity federal courts show to sister courts and deference

toward a sister court's prior adjudication of the same issue involving the same parties. *See, e.g.* Wright & Miller, 18B Fed. Practice & Procedure § 4478.4 ("For the most part, later courts tend to adhere to earlier rulings by other courts for the same reasons that inform general law-of-the-case practices.").

(*Id.* at 10-11.)

Judgment Creditors further argue that the information sought by the subpoena is discoverable. (*Id.* at 11-13.) In addition, Judgment Creditors maintain the only federal case Judgment Debtor cites in support of his argument that Judgment Creditors cannot seek discovery of Judgment Debtor's conveyances because they did not assert a fraudulent conveyance claim in the underlying lawsuit is distinguishable because the case dealt with **pre**-judgment, not post-judgment, discovery. (*Id.* at 14.)

Judgment Creditors assert that the Trusts' responses to the garnishments issued to the Trusts do not foreclose discovery here, as "the garnishments do nothing to shed light on past transactions and other financial relationships of Gunzburg with other parties that, as noted above, are permissible topics of post-judgment discovery." (*Id.*) In addition, Judgment Creditors maintain they "are not bound to accept the credibility of third-parties" and may test that credibility in discovery. (*Id.*)

On October 23, 2024, Judgment Creditors propounded its First Set of Post-Judgment Discovery Requests to Judgment Debtor. (Doc. No. 93-6.) The relevant discovery requests included the following Interrogatories and Requests for Production:

> **INTERROGATORY NO. 3:** Are you or have you been during the previous 6 years a beneficiary, trustee, settlor, grantor, donor, or creator of any trust or estate, or do you hold any life interest or remainder interest, whether vested or contingent, in any trust or estate? If so, please identify the trust or estate, state your role (beneficiary, trustee, grantor, holder of interest) with respect to such trust or estate, identify when the trust or estate was created and in what state/jurisdiction; the trustee, representative, settlor, grantor, donor, creator, administrator, and beneficiaries of the trust or estate; the assets of the trust or estate; the present value of such trust or estate; the value of your interest in such trust or estate; and all amounts you have given to or received from such trust or estate.

> **INTERROGATORY NO. 4:** Identify all individuals, entities, or trusts which have given or paid you money in the previous 6 years, identify the amount given or paid to you from each source, state whether the money was given as a gift or paid to you

for some other reason, and if for some other reason than a gift, identify the reason the money was paid to you.

**INTERROGATORY NO. 5:** Identify all individuals, entities, or trusts to which you have given or paid money in the previous 6 years in a total amount of $1,000 or more, identify the amounts you paid to each recipient, state whether the money was given as a gift or paid by you for some other reason, and if for some other reason than a gift, identify the reason the money was paid by you.

**INTERROGATORY NO. 7:** Identify all persons, entities, businesses, or trusts from which you have received payment of any wages or salary in the previous 6 years, and for each such person, entity, business, or trust, provide the full legal name, address, date range for which you were paid wages or salary, and total amount of wages or salary you were paid.

**INTERROGATORY NO. 9:** Identify by name, address, and telephone number each and every domestic and foreign bank and/or financial institution in which you have had an account or over which you have had signatory authority or similar control during the previous 6 years. For each such bank or financial institution, please provide the account number, the type of account, the current balance of such account, and the record owner or title of the account.

**INTERROGATORY NO. 15:** Identify all stocks, bonds, securities, money market interests, mutual funds, exchange traded funds, cryptocurrency, and other investments owned by or held on behalf of you; any entity in which you have an ownership stake; and any trusts for which you are beneficiary, trustee, settlor, grantor, or donor during the previous 6 years, and for each state the following: name of investment item, record owner, number of units, cost of each unit when purchased, current fair market value of each unit, date of sale or transfer if the investment item has been transferred or sold, whether the investment item is pledged or assigned, the name and address of any person or entity to whom it is pledged or assigned, whether you receive any dividends or interest on the investment items, the amount of such dividends or interest received in each year of the previous 6 years, and the date the dividends or interest are payable.

**INTERROGATORY NO. 17:** Have you directly or indirectly transferred, conveyed, or disposed of any property or other items of value with an initial cost or fair market value of $1,000 or more during the previous 6 years? If so, please describe the item; state the date of the transfer; state the initial cost of the item; state the fair market value of the item when transferred; state the consideration you received for the item; and state the name and address of the person, entity, or trust to whom the item was transferred and any relation you have to such person, entity, or trust.

**REQUEST FOR PRODUCTION NO. 1:** All documents you reviewed, consulted, or identified in connection with your responses to the foregoing Interrogatories or that have information pertaining to the information requested therein.

**REQUEST FOR PRODUCTION NO. 4:** Copies of all receipts, statements, deposit slips, wire transfer memoranda, debit slips, electronic mail messages, and other such documents reflecting any cash, funds, stock, bonds, investment vehicles, or other property (real, personal, tangible, intangible, or other property) having a value in excess of $1000.00 (regardless of consideration received in exchange) that was transferred in the previous 6 years by: (a) you (individually or in any capacity); (b) your spouse (individually or in any capacity); or (c) any entity, trust, or estate identified in response to Interrogatories 1, 2, and 3.

**REQUEST FOR PRODUCTION NO. 6:** Copies of all documents, including correspondence, account documentation, account statements, agreements, contracts, and memoranda regarding any stocks, bonds, mutual funds, financial investments, investment accounts, pension plans, or retirement plans held by or on behalf of (a) you (individually or in any capacity); (b) your spouse (individually or in any capacity); or (c) any entity, trust, or estate identified in response to Interrogatories 1, 2, and 3 during the previous 6 years.

**REQUEST FOR PRODUCTION NO. 7:** Copies of all documents establishing, modifying, amending, setting forth terms of, or pertaining to any domestic and/or foreign trust or estate in which you are or were a beneficiary, trustee, settlor, grantor, donor, or creator, or in which you hold an interest of any sort.

**REQUEST FOR PRODUCTION NO. 11:** Copies of all agreements, contracts, correspondence, letters, notes, memoranda, and other such documents regarding the disposition, transfer, purchase, or sale of any asset within the last 6 years that was owned by or held on behalf of (a) you (individually or in any capacity); (b) your spouse (individually or in any capacity); or (c) any entity, trust, or estate identified in response to Interrogatories 1, 2, and 3.

**REQUEST FOR PRODUCTION NO. 14:** Copies of all financial statements and/or loan applications prepared by or on behalf of (a) you (individually or in any capacity); (b) your spouse (individually or in any capacity); or (c) any entity, trust, or estate identified in response to Interrogatories 1, 2, and 3.

(*Id.*)

Judgment Creditors represented to the court in the Western District of Kentucky that: (1) they served the discovery requests on Judgment Debtor's counsel[3] by mail and email; (2) on November 22, 2024, Judgment Debtor's counsel requested a two-week extension of time to respond to the discovery requests; (3) Judgment Creditors asked that Judgment Debtor begin producing documents on November 26, 2024,

---

[3] The Court notes that counsel for Judgment Debtor in the Kentucky action is the same attorney representing Judgment Debtor in this case.

even if additional time was required for written responses to the discovery requests; and (4) Judgment Creditors received no response, even after sending a follow up email. (Doc. No. 93-7 at 2.)

On January 14, 2025, Judgment Creditors filed a Motion to Compel Discovery Responses in the Kentucky action. (*Id.*) Judgment Debtor failed to file a response to the Motion to Compel. (*Id.*)

On February 24, 2025, in granting the Motion to Compel, the Western District of Kentucky found as follows:

> The Discovery Requests are the types of discovery requests permissible under Rule 69 because they seek information regarding the existence and whereabouts of Gunzburg's assets and prior financial affairs and transfers of assets relating to Gunzburg. *See, e.g., Miller v. Ability Recovery Servs., LLC*, 2020 WL 2838597, at *2 (S.D. Ohio June 1, 2020). Additionally, though Gunzburg asked for an extension of time to respond to the Discovery Requests, there is no indication that Gunzburg objected to the Discovery Requests. Because Ginzburg failed to object to the Discovery Requests, he waived his right to dispute the propriety of the discovery sought. *Id.*

*GPH Louisville Hillcreek LLC, et al. v. Redwood Holdings, LLC, et al.,* Case No. 3:21-cv-63 (W.D. Ky.) (Doc. No. 180 at 3). The Western District of Kentucky ordered Judgment Debtor to respond to the discovery requests within 14 days of entry of the order. (*Id.*)

Judgment Debtor failed to respond to the discovery requests as ordered. (Doc. No. 93-8 at 2-3.) On May 12, 2025, the Western District of Kentucky found that Judgment Debtor's conduct constituted disobedience of the February 24, 2025 Order granting the Motion to Compel and set a show cause hearing for May 29, 2025. (*Id.* at 3.) The Western District of Kentucky ordered both Judgment Debtor and counsel to appear at the hearing. (*Id.*) While Judgment Debtor's counsel appeared at the May 29, 2025 show cause hearing, Judgment Debtor failed to appear. (*Id.* at 4.)

On June 13, 2025, the assigned magistrate judge in the Kentucky action found Judgment Debtor "in flagrant disregard of a court order" and recommended the Western District of Kentucky "sanction Gunzburg to 3% interest in the Judgment for his continued failure to comply with Court Orders" if Judgment Debtor failed to provide "thorough and complete responses to the Discovery Requests and produce responsive

documents within 30 days of this Order." (*Id.* at 7-8.) The assigned magistrate judge further recommended the Western District of Kentucky "continue to sanction Gunzburg 3% interest every three months until he complies with the Court's Order."[4] (*Id.*)

The undersigned agrees with the Western District of Kentucky that, given Judgment Debtor's failure to respond to the discovery requests in the Kentucky action, Judgment Debtor has waived his right to object to the relevance[5] of the discovery requests contained in the subpoena to the Trusts. The information sought by the Trusts consists of the following, which mirrors some of the discovery requests above:

### Documents Requested

1. All agreements, declarations, certificates, deeds, and other documents relating to the establishment and governance of the Trusts, together with all amendments, exhibits, and attachments.

2. All documents reflecting information relating to funding, deposits, conveyance of assets, and/or other contributions to the Trusts, and all withdrawals and distributions from or by the Trusts, including but not limited to the dates of all such transactions.

3. All documents reflecting assets held by the Trusts and liabilities owed by the Trusts.

4. All Trust bank account statements.

5. All documents relating to any and all transactions between any of the Trusts and Debtor.

---

[4] The Court notes that Judgment Debtor's counsel filed objections to the June 13, 2025 Report and Recommendation as to the findings relating to counsel and the sanctions imposed on counsel. *GPH Louisville Hillcreek LLC, et al. v. Redwood Holdings, LLC, et al.,* Case No. 3:21-cv-63 (W.D. Ky.) (Doc. No. 187). On July 10, 2025, Judgment Creditors filed a response to Judgment Debtor's counsel's objections. Case No. 3:21-cv-63 (W.D. Ky.) (Doc. No. 188). On October 1, 2025, Judgment Creditors filed a supplement to their response to Judgment Debtor's counsel's objections. Case No. 3:21-cv-63 (W.D. Ky.) (Doc. No. 189).
[5] The undersigned does not find that Judgment Debtor waived his right to challenge the scope of the subpoena on the ground that the requests are overbroad, for the reasons discussed *infra.*

(Doc. No. 85-1 at 6.)

However, even if Judgment Debtor did not waive his objections to the relevance of the requested information, "[i]nformation about trust accounts. . . is relevant to an effort to collect a judgment in order to determine if such accounts are repositories for concealed assets of the judgment debtor." *Wells Fargo*, *Wells Fargo Bank, N.A. v. MPC Investors, LLC*, Case No: 09-11249, 2011 WL 13552576, at *1 (E.D. Mich. Feb. 3, 2011). "The scope of post-judgment discovery is 'very broad,' *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) (citations omitted), and the creditor is entitled to 'utilize the full panoply of federal discovery measures' provided for under federal and state law to obtain information from parties and non-parties alike, including information about assets on which execution can issue or about assets that have been fraudulently transferred. *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D.N.Y.1977) (judgment creditor entitled to discover portions of a settlement agreement relating to the existence or transfer of defendants' assets, where it was alleged that the agreement involved improper transfers of such assets)." *Andrews v. Raphaelson*, Civil Action No. 5:09–cv–077–JBC, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009). "Post-judgment discovery can be used to gain information relating to the 'existence or transfer of the judgment debtor's assets.'" *Scioto Constr., Inc. v. Morris*, Case No. 4:99-CV-83, 2007 WL 108906, at *2 (E.D. Tenn. Jan. 9, 2007) (quoting *British Intern. Ins. Co., Ltd. v. Seguros La Republica, S.A.* 200 F.R.D. 586, 589 (W.D. Tex. 2000)). *Cf. Insured Advocacy Group, LLC v. Spartan Services Corp.*, Case No. 23-cv-07212 (LJL), 2024 WL 4893580, at *3 (S.D.N.Y. Nov. 26, 2024) ("'[D]istrict courts across the country generally do not allow **pre-judgment** discovery regarding a defendant's financial condition or ability to satisfy a judgment ... on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence.'") (quoting *SierraPine v. Refiner Prods. Mfg.*, 275 F.R.D. 604, 609 (E.D. Cal. 2011)) (emphasis added) (additional citations omitted).

While Judgment Debtor makes much of the fact that the Trusts' assets are "protected from garnishment and attachment under Ohio law" (Doc. No. 85 at 3-5), as Judgment Creditors argue:

According to [Judgment Debtor's] own personal financial statement from 2018, he and the Trusts shared ownership of companies and he and the Trusts engaged in transactions with each other that left the Trusts owing him in excess of $650,000. He testified in his deposition that he could not remember transactions with the Trusts, including when he was repaid the loans receivable from the Trusts that he reported on his personal financial statement as due and owing to him (and his bank records do not reflect that he received the full amount of those loans receivable).

(Doc. No. 93 at 12.)  The undersigned recommends the Court find that even if Judgment Debtor had not waived his relevancy objections, the requested information is relevant under the broad scope of post-judgment discovery.

That the Trusts responded to the Court's Order and Notice of Garnishment of Property Other than Personal Earnings in the negative does not foreclose Judgment Creditors' right to seek discovery from the Trusts. *BR North 223, LLC v. Glieberman*, Case No. 13–50297, 2013 WL 6482455, at *3 (E.D. Mich. Dec. 10, 2013) ("Plaintiff is not bound by Mr. Glieberman's or his children's credibility, and it is entitled to discovery regarding transfers among these entities.").

"That documents are confidential 'is not in itself grounds for quashing a subpoena.'" *Davis*, 2013 WL 146362, at *6 (quoting *Hackmann,* 2009 WL 330314, at *2).  The Court sees no reason why the documents cannot be produced pursuant to a protective order.  However, there is no protective order on the docket, nor is the Court aware that one is in place in this case.  Therefore, the undersigned recommends the Trustee not be required to respond to the subpoena until a protective order is in place.

### b.  Scope

Judgment Debtor argues that the document requests in the subpoena are "overly broad," as "[t]he Subpoena does not restrict the production to any specific timeframe, meaning the Trustee would be expected to produce documents going back to 2010."  (Doc. No. 85 at 3.)  In addition, Judgment Debtor argues that the subpoena is "unduly burdensome."  (*Id.* at 4.)  Relying on an affidavit by Trustee Benjamin Levi, Judgment Debtor argues that the requested documents "are not easily accessible and/or are not maintained in such a fashion that production would be a simple matter [of] copying records and producing the same"

and "[s]ome categories of documents were not maintained and [are] no longer available from outside sources." (*Id.*)  The Trustee "anticipates that it would take several weeks to gather the documents, if such a gathering were even possible." (*Id.*)

Judgment Creditors respond that Judgment Debtor only has himself to blame for the need for and the scope of the subpoena.  (Doc. No. 93 at 15.)  Judgment Creditors assert that "[b]ecause [Judgment Debtor] has chosen not to provide information to Judgment Creditors pursuant to the Discovery Requests – even after being compelled to do so and even after Magistrate Judge Edwards entered the Report & Recommendation recommending he be held in contempt for failing to do so – the Judgment Creditors have far more limited information regarding Gunzburg, his assets, transfers of assets involving him, and his relationships with the Subpoena recipients than Judgment Creditors should." (*Id.*)

While the Court agrees that Judgment Debtor finds himself in a situation of his own making, the discovery requests propounded to Judgment Debtor in the Kentucky action had a date limitation.  The Court agrees with Judgment Debtor that the lack of a date limitation makes the discovery requests in the subpoena overbroad.  Since Judgment Creditors limited the discovery requests propounded to Judgment Debtor in October 2024 to the previous six years, the undersigned recommends that the Court limit the discovery requests in the subpoena to the previous seven years, allowing for the passage of time between October 2024 and now.  Such a limitation should result in a reduced burden on the Trustee in producing the relevant documents.  Moreover, as the Trustee admits, "[m]ost of the documents sought by subpoena are not maintained in the normal and ordinary course of the administration of the Trusts" and that he would not have access to bank records going back more than one year (Doc. No. 85-1 at 1-2); therefore, it should not be unduly burdensome for the Trustee to respond, as he cannot produce what he does not have.

### 2) Subpoena to Charles Schwab

Regarding the subpoena to Charles Schwab, Judgment Debtor argues that while the request for his financial records "is not objectionable, per se," the subpoena "covertly seeks the financial records of non-

18

parties," as the subpoena's definition of "account(s)" includes accounts in Judgment Debtor's "'name and/or for which Debtor is an authorized signatory.'" (Doc. No. 86 at 1-2.) Judgment Debtor asserts that "[t]he mere act of being a co-signor should not expose third parties to the invasive discovery of their personal and confidential financial information." (*Id.* at 2.) Judgment Debtor argues that a second problem with the subpoena is "the waste of judicial resources," as the parties stipulated that funds paid into the Court from Judgment Debtor's Charles Schwab retirement account were to be returned to Schwab. (*Id.*) Therefore, Judgment Debtor asks the Court to "quash or modify the Subpoena and enter a Protective Order barring Plaintiffs' [sic] from propounding any further post-judgment discovery requests upon Schwab." (*Id.*)

Judgment Creditors respond that Judgment Debtor "testified in his deposition that Schwab took over the Ameritrade account he reported on his personal financial statement as having over $30,000 in it" and Judgment Debtor "could not say if he moved money from that account to any other." (Doc. No. 93 at 13; *see also id.* at 6-7.) Judgment Creditors assert that "separate records show that over $350,000 was moved from a Charles Schwab account through a bank account over which Gunzburg had signing authority (and thus control) in December 2023." (*Id.* at 13.) Therefore, Judgment Creditors argue, "[i]t is certainly within the scope of post-judgment discovery for Judgment Creditors to understand what Schwab accounts Gunzburg had in his name or over which he had control, and to obtain information regarding what happened to funds that were in those accounts." (*Id.*) Judgment Creditors maintain that Schwab's garnishment response does not foreclose Judgment Creditors' "right to subpoena information," as "the garnishments do nothing to shed light on past transactions and other financial relationships of Gunzburg with other parties that, as noted above, are permissible topics of post-judgment discovery" and "Judgment Creditors are not

bound to accept the credibility of third-parties and are entitled to test that credibility in discovery." (*Id.* at 14.)

As this Court has explained:

> Rule 26(b)(1) provides that a party is entitled to take discovery of any matter that is relevant to the claim or defense of any party, even if not admissible itself, if such discovery is reasonably calculated to lead to admissible evidence. Particularly relevant to post judgment discovery is "information about assets [of parties and non-parties alike,] on which execution can issue or about assets that have been fraudulently transferred." *Andrews,* 2009 WL 1211136, at *3 (quoting *Magnaleasing, Inc.,* 76 F.R.D. at 560 n. 1) (judgment creditor entitled to discover portions of a settlement agreement relating to the existence or transfer of defendants' assets, where it was alleged that the agreement involved improper transfers of such assets)); *see also, OHM Res. Recovery Corp.,* 1991 WL 146234 at *2 ("a judgment creditor [may] obtain discovery not only of the debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets") (collecting cases). While judgment creditors typically cannot compel nonparties to disclose their assets, "[i]nquiry into the assets of third persons is permissible where 'the relationship between [the judgment debtor and third person(s)] is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them.'" *Aetna Group USA, Inc. v. AIDCO Int'l, Inc.,* No. 1:11–mc–023, 2011 WL 2295137, at *5 (S.D.Ohio June 8, 2011) (citations omitted) (alterations in original); *see also, Credit Lyonnais, S.A. v. SGC International, Inc.,* 160 F.3d 428, 431 (8th Cir.1998); *Falicia v. Advanced Tenant Servs., Inc.,* 235 F.R.D. 5, 7–8 (D.D.C.2006).

*F.T.C. v. Trudeau*, Case No. 5:12MC35, 2012 WL 5463829, at *4 (N.D. Ohio Nov. 8, 2012).

Judgment Debtor faults Judgment Creditors for failing to identify "any third party having a questionable relationship with the debtor," implying that Judgment Creditors therefore fail to meet the exception to the general rule regarding the discovery of non-parties' assets. (Doc. No. 86 at 4.) However, it is *Judgment Debtor* who bears the burden of showing the information sought by the subpoena is improper: "'A nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted.' *In re Smirman,* 267 F.R.D. 221, 223 (E.D.Mich.2010) (citing *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y.1996); *Irons v. Karceski,* 74 F.3d 1262, 1264 (D.C.Cir.1995))." *Trudeau*, 2012 WL 5463829, at *2. Based on the information before the Court, discovery

of these records is relevant to determine if Judgment Debtor used these accounts to conceal his assets. *See Trudeau*, 2012 WL 5463829, at *5.

Furthermore, nowhere in the Motion to Quash does Judgment Debtor assert that, for the accounts in which he is a "signatory, but not an owner," that he does not receive any financial benefit from such accounts. *Wells Fargo*, 2011 WL 13552576, at *2 (excluding production of information regarding an account over which judgment debtor had control but from which he received no financial benefit).

The Court agrees with Judgment Debtor that Charles Schwab's garnishment response (Doc. No. 32) and the parties' joint stipulation to return the funds from certain Charles Schwab accounts (Doc. Nos. 80-81) do not foreclose Judgment Creditors' right to seek the requested discovery from Charles Schwab. *See BR North 223, LLC*, 2013 WL 6482455, at *3 ("Plaintiff is not bound by Mr. Glieberman's or his children's credibility, and it is entitled to discovery regarding transfers among these entities."). Furthermore, the subpoena to Charles Schwab requests information beyond what was sought in the Order and Notice of Garnishment of Property Other Than Personal Earnings (Doc. No. 16), as the subpoena asks for production of "[a]ll documents relating to any and all of Debtor's accounts with Schwab from January 1, 2019, to present, including, but not limited to, applications, deposits, transfers, withdrawals, transaction logs, account statements, tax statements or tax forms, and account ownership information associated with the accounts." (Doc. No. 86-1 at 5.)

For all the foregoing reasons, the undersigned recommends the Court DENY the Motion to Quash the subpoena to Charles Schwab and for Protective Order (Doc. No. 86).

### III.    Conclusion

The undersigned recommends that the Court GRANT IN PART and DENY IN PART the Motion to Quash the subpoena to the Trusts and for Protective Order (Doc. No. 85) as follows. Given Judgment Debtor's failure to respond to the discovery requests in the Kentucky action, Judgment Debtor has waived his right to object to the relevance of the discovery requests contained in the subpoena. The undersigned

recommends the Court find that even if Judgment Debtor had not waived his relevancy objections, the requested information in the subpoena is relevant under the broad scope of post-judgment discovery. The undersigned further recommends that the lack of a date limitation makes the discovery requests in the subpoena overbroad, and that the Court should limit the discovery requests in the subpoena to the previous seven years, allowing for the passage of time between October 2024 and now. However, the undersigned further recommends such information need not be produced until a protective order is in place given the confidentiality of the information.

The undersigned recommends that the Court DENY the Motion to Quash the subpoena to Charles Schwab (Doc. No. 86).

IT IS SO RECOMMENDED.


Date: October 28, 2025
                                                    _s/ Jonathan Greenberg_
                                                    Jonathan D. Greenberg
                                                    United States Magistrate Judge


## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**