**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **GPH Louisville Hillcreek LLC, et al.,** | **Case No. 1:24mc00033** |
| **Plaintiffs,** | |
| | **JUDGE PAMELA A. BARKER** |
| **-vs-** | |
| | **Magistrate Judge Jonathan D. Greenberg** |
| **Redwood Holdings, LLC, et al.,** | |
| **Defendants.** | **MEMORANDUM OPINION & ORDER** |

On October 28, 2025, Magistrate Judge Jonathan D. Greenberg issued a Report & Recommendation (Doc. No. 96) that the undersigned (1) grant in part and deny in part Defendant/Judgment Debtor Eli M. Gunzburg's ("Gunzburg") Motion to Quash Subpoena issued to Eli M. Gunzburg Irrevocable Trust 2010, Eli M. Gunzburg Irrevocable Trust 2017, and Frank Gunzburg 2015 Succession Trust and for Protective Order (Doc. No. 85); and (2) deny Gunzburg's Motion to Quash Subpoena Issued to Charles Schwab & Co., Inc. and for Protective Order (Doc. No. 86.)

On November 9, 2025, Gunzburg filed Objections to Magistrate Judge Greenberg's Report & Recommendation. (Doc. Nos. 98, 99.) Plaintiffs/Judgment Creditors GPH Louisville Hillcreek LLC, GPH Louisville Camelot LLC, GPH Louisville Mt. Holly LLC, GPH Louisville St. Matthews LLC, GPH Frankfort LLC, GPH Kirtland LLC, GPH Vanceburg LLC, GPH Stanford LLC, and GPH Greensburg LLC (hereinafter referred to collectively as "Judgment Creditors") filed a Response in Opposition on November 24, 2025. (Doc. No. 100.)

For the following reasons, Gunzburg's Objections (Doc. Nos. 98, 99) are DENIED and Magistrate Judge Greenberg's Report & Recommendation (Doc. No. 96) is ADOPTED in full.

Gunzburg's Motion to Quash the Charles Schwab Subpoena (Doc. No. 86) is DENIED.  Gunzburg's Motion to Quash the Trust Subpoena (Doc. No. 85) is GRANTED IN PART and DENIED IN PART, as set forth herein.

## I.        Relevant Background

On January 25, 2024, District Judge Rebecca Grady Jennings of the United States District Court for the Western District of Kentucky issued Findings of Fact & Conclusions of Law after conducting a seven-day bench trial in the matter of *GPH Louisville Hillcreek LLC, et al. v. Redwood Holdings, LLC, et al.*, Case No. 3:21-cv-63 (W.D. Ky.) (hereinafter "the Kentucky action").  Therein, Judge Jennings awarded Judgment Creditors a total of $513,440.40 in damages from Defendants Redwood Holdings, LLC,  Hillcreek Leasing, LLC, Camelot Leasing, LLC, Mt. Holly Leasing, LLC, St. Matthews Leasing, LLC, Frankfort Leasing, LLC, Kirtland Leasing, LLC, Vanceburg Leasing, LLC, Stanford Leasing, LLC, Green Hill Leasing, LLC, and Gunzburg (hereinafter referred to collectively as "Judgement Debtors").  (Doc. No. 3.)  Judge Jennings also found Gunzburg personally liable for breach of guaranty.  (*Id.*)  On May 1, 2024, Judge Jennings awarded Judgment Creditors an additional $524,344.00 in attorney's fees and $21,739.05 in costs.  (Doc. No. 1-1.)  Thus, the total principal amount awarded to Judgment Creditors in the Kentucky action is $1,059,523.45.

On July 10, 2024, Judgment Creditors filed a Certificate of Judgment for Registration in the Northern District of Ohio, attaching Judge Jennings' May 1, 2024 Memorandum Opinion & Order. (Doc. Nos. 1, 1-1.)  Judgment Creditors later filed a Notice attaching Judge Jennings' Findings of Fact and Conclusions of Law.  (Doc. Nos. 2, 3.)

Since that time, Judgment Creditors have pursued post-judgment discovery (in both the instant action and the Kentucky action) regarding Gunzburg's assets and financial transactions.  As it is

relevant to the pending Motions, the Court will briefly summarize Judgment Creditors' post-judgment discovery efforts, below.

### A.    Post-Judgment Discovery in the Kentucky Action

On October 23, 2024, Judgment Creditors issued a First Set of Post-Judgment Discovery Requests ("Post-Judgment Discovery Requests") to Gunzburg in the Kentucky Action.  (Doc. No. 93-6.)  Several of Judgment Creditors' discovery requests sought information and documents regarding the types of assets held by Gunzburg, as well as any trusts for which he was a beneficiary, trustee, settlor, grantor, donor, or creator, or in which he held any other interests.  (*Id*.)  Gunzburg failed to respond to Judgment Creditors' Post-Judgment Discovery Requests.

On January 14, 2025, Judgment Creditors filed a Motion to Compel.  *GPH Louisville Hillcreek LLC, et al. v. Redwood Holdings, LLC, et al*., Case No. 3:21-cv-63 (W.D. Ky.) (Doc. No. 178).  Gunzburg did not respond.  On February 24, 2025, Magistrate Judge Regina Edwards entered an Order (1) finding that, by failing to object, Gunzburg had waived his right to dispute the propriety of the Post-Judgment Discovery Requests; and (2) requiring him to respond to the Discovery Requests by March 10, 2024.  (*Id*. at Doc. No. 180.)  After Gunzburg failed to respond as ordered, Judgment Creditors filed a Motion seeking to hold Gunzburg in civil contempt.  (*Id*. at Doc. No. 181.)  Gunzburg failed to respond.

The District Court referred the matter to Magistrate Judge Edwards, who found that Gunzburg's conduct constituted disobedience of the February 24, 2025 Order.  (*Id*. at Doc. Nos. 182, 183.)  On May 12, 2025, Magistrate Judge Edwards issued a Show Cause Order, directing Gunzburg and his counsel to appear before the Court on May 29, 2025 to show cause as to why they should not be held in contempt.  (*Id*. at Doc. No. 183.)  Gunzburg was warned that his failure to appear or

3

sufficiently show cause for not complying with the Show Cause Order could result in a finding of contempt. (*Id*.) Magistrate Judge Edwards conducted the show cause hearing on May 29, 2025. Attorney Brenda Coey appeared on behalf of Judgment Debtors, including Gunzburg. Gunzburg, however, did not appear.

On June 13, 2025, Magistrate Judge Edwards issued a Report & Recommendation. (*Id*. at Doc. No. 186.) As relevant herein, Judge Edwards recommended that the District Court issue an order (1) granting in part Judgment Creditors' motion for contempt; (2) finding Gunzburg in civil contempt; and (3) ordering Gunzburg to respond to Judgment Creditors' discovery requests within 30 days. (*Id*.) She further recommended that, if Gunzburg failed to provide thorough and complete responses to the Post-Judgment Discovery Requests within 30 days, the Court should issue an Order sanctioning Gunzburg with 3% interest on the Judgment and continue to sanction Gunzburg 3% interest every three months until he complies with the Court's Order. (*Id*.) Judge Edwards also recommended that Attorney Coey be held in civil contempt and ordered to pay certain costs and attorney fees incurred by Judgment Creditors. (*Id*.)

On June 26, 2025, Attorney Coey filed objections, solely as to Judge Edwards's recommendations that she (i.e., Attorney Coey) be sanctioned and ordered to pay Judgment Creditors' attorney fees and costs. (*Id*. at Doc. No. 187.) No objections were filed with respect to Judge Edwards's recommendations that Gunzburg be held in contempt and sanctioned for failing to respond to Judgment Creditors' Post Judgment Discovery Requests. On July 10, 2025, Judgment Creditors filed a response to Judgment Debtor's counsel's objections. (*Id.* at Doc. No. 188.)

On January 14, 2026, District Judge Jennings issued a Memorandum Opinion & Order overruling Attorney Coey's Objections and adopting Judge Edwards's Report & Recommendation. (*Id*. at Doc. No. 190.)

Several months later, on March 31, 2026, Judgment Creditors filed a Renewed Motion to Compel, Renewed Motion for Civil Contempt, and Motion for Sanctions.  (*Id*. at Doc. No. 194.) Therein, Judgment Creditors asserted that Gunzburg had "produced zero documents to Judgment Creditors, while giving unverified, evasive, and even blatantly false, discovery responses."  (*Id*.) Gunzburg filed a response on April 30, 2026.  (*Id*. at Doc. No. 196.)

District Judge Jennings conducted a hearing on May 13, 2026.  (*Id*. at Doc. No. 199.)  In an Order issued that date, Judge Jennings found (in relevant part) that "Gunzburg and Coey have failed to comply with the Court's January 14, 2026 Order ... and again failed to adequately respond to [Judgment Creditors'] discovery requests."  (*Id*.)  Judge Jennings therefore found "for the second time, that Gunzburg and Coey are to be held in civil contempt."  (*Id*.)  Gunzburg and Coey were ordered to provide thorough and complete responses to Judgment Creditors' discovery requests by June 3, 2026. (*Id*.)  Judge Jennings set another hearing in the matter for June 8, 2026.  (*Id*.)

### B.      Relevant Garnishment Proceedings and Subpoenas in the Instant Action

Meanwhile, Judgment Creditors pursued both garnishment proceedings and post-judgment discovery in the instant action.  Specifically, on July 25, 2024, Judgment Creditors filed Requests for Writs of Non-Wage Garnishment pursuant to Ohio Revised Code §§ 2716.11 and 2716.13 to nine (9) third-party garnishees, including Charles Schwab & Co, Inc. (hereinafter "Charles Schwab") and the Eli M. Gunzburg Irrevocable Trust 2010, the Eli M. Gunzburg Irrevocable Trust 2017, and the Frank Gunzburg 2015 Succession Trust (hereinafter referred to collectively as "the Trusts").  (Doc. Nos. 4

through 12.)  On that same date, the undersigned referred the instant action to Magistrate Judge Greenberg for general processing of the Requests for Writs of Non-Wage Garnishment.  (Doc. No. 13.)

On August 1, 2024, Magistrate Judge Greenberg issued Orders and Notices of Garnishment for all nine (9) third party garnishees, including Charles Schwab and the Trusts.  (Doc. Nos. 16, 20, 22, 24.)  The Trusts each filed Answers reporting that they did not have more than $400 in money, property, or credits, other than personal earnings, of Gunzburg under their control and in their possession.  (Doc. Nos. 53, 54, 55.)

Charles Schwab filed a Response, in which it stated (in relevant part) that (1) "Schwab account no. XXXX-5062 is an Individual Account in the name of Eli M Gunzburg and contains $352.32 in cash;" and (2) "Schwab account no. XXXX-7108 is a Simplified Employee Plan Individual Retirement Account in the name of Eli M Gunzburg and contains $3,648.77 in cash."  (Doc. No. 32.) On December 4, 2024, Magistrate Judge Greenberg ordered Charles Schwab to pay the amount over $400 under Schwab's control and in the Schwab's possession relative to these two accounts, to the Clerk of Court.  (Doc. No. 56.)  On December 12, 2024, Charles Schwab paid $352.32 and $3,252.76 to the Clerk of Court as ordered.

On December 19, 2024, Gunzburg filed Objections to Magistrate Judge Greenberg's Charles Schwab Order.  (Doc. No. 61.)   During a hearing held on July 23, 2025, the parties agreed to release the funds to Charles Schwab for deposit into the account from which they came.  (Doc. No. 79.)  On August 1, 2025, the Court issued a Stipulated Order (1) dismissing without prejudice the non-wage garnishment Order issued to Charles Schwab and the Order requiring Charles Schwab to pay amounts into the Court in this action, and (2) requiring the Clerk of the Court to return all funds paid into this

6

Court by Charles Schwab to Charles Schwab to place back into the accounts in Eli Gunzburg's name from which such funds were paid.  (Doc. No. 82.)

On August 7, 2025 (i.e., after Gunzburg had refused to respond to the Post-Judgment Discovery Requests in the Kentucky Action and Magistrate Judge Edwards had recommended that he be held in contempt), Judgment Creditors issued a Subpoena to Charles Schwab.  (Doc. No. 86-1.)  Therein, Judgment Creditors directed Charles Schwab to produce the following documents:

1.  All documents relating to any and all of [Gunzburg's] accounts with Schwab from January 1, 2019, to present, including, but not limited to, applications, deposits, transfers, withdrawals, transaction logs, account statements, tax statements or tax forms, and account ownership information associated with the accounts.

(*Id*. at PageID# 1082.)  The Subpoena provided that the term "account(s)" "means in the broadest extent possible to include, but not limited to, a checking account, savings account, investment account, brokerage account, retirement account, money market deposit account, certificate of deposit account, and/or borrowing account in [Gunzburg's] name **and/or for which [Gunzburg] is an authorized signatory.**" (*Id*.) (emphasis added).

On that same date, Judgment Creditors issued a Subpoena to Benjamin Levi, who is the Trustee of the Trusts at issue herein.  (Doc. No. 85-1 at PageID# 925.)  Therein, Judgment Creditors directed Mr. Levi to produce the following documents:

1.  All agreements, declarations, certificates, deeds, and other documents relating to the establishment and governance of the Trusts, together with all amendments, exhibits, and attachments.

2.  All documents reflecting information relating to funding, deposits, conveyance of assets, and/or other contributions to the Trusts, and all withdrawals and distributions from or by the Trusts, including but not limited to the dates of all such transactions.

3.   All documents reflecting assets held by the Trusts and liabilities owed by the Trusts.

4.   All Trust bank account statements.

5.   All documents relating to any and all transactions between any of the Trusts and [Gunzburg].

(*Id*. at PageID# 928.)  Although technically issued to Mr. Levi, the Court will hereinafter refer to this Subpoena as "the Trust Subpoena."

On August 20, 2025, Gunzburg filed separate Motions to Quash and for Protective Order with respect to the Trust Subpoena and the Charles Schwab Subpoena.  (Doc. Nos. 85, 86.)  Judgment Creditors filed an Omnibus Memorandum in Opposition to Gunzburg's Motions on September 10, 2025.  (Doc. No. 93.)

The undersigned referred the Motions to Magistrate Judge Greenberg.  (Doc. No. 87.)   On October 28, 2025, Magistrate Judge Greenberg issued a Report & Recommendation ("R&R"), in which he recommends as follows:

> The undersigned recommends that the Court GRANT IN PART and DENY IN PART the Motion to Quash the subpoena to the Trusts and for Protective Order (Doc. No. 85) as follows.  Given [Gunzburg's] failure to respond to the discovery requests in the Kentucky action, [Gunzburg] has waived his right to object to the relevance of the discovery requests contained in the [Trust] subpoena. The undersigned recommends the Court find that even if [Gunzburg] had not waived his relevancy objections, the requested information in the [Trust] subpoena is relevant under the broad scope of post-judgment discovery.  The undersigned further recommends that the lack of a date limitation makes the discovery requests in the [Trust] subpoena overbroad, and that the Court should limit the discovery requests in the [Trust] subpoena to the previous seven years, allowing for the passage of time between October 2024 and now. However, the undersigned further recommends such information need not be produced until a protective order is in place given the confidentiality of the information.
>
> The undersigned recommends that the Court DENY the Motion to Quash the subpoena to Charles Schwab (Doc. No. 86).

(Doc. No. 96 at PageID#s 1247-1248.)

Gunzburg filed Objections to Magistrate Judge Greenberg's R&R on November 9, 2025. (Doc. Nos. 98, 99.)  Judgment Creditors filed an Omnibus Response in Opposition on November 24, 2025.[1]  (Doc. No. 100.)

## II.     Legal Standards

### A.        Standard of Review on Objections

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).

However, where a district judge reviews a magistrate judge's resolution of a non-dispositive matter, it is not a *de novo* review.  *See, e.g., Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019); *Draughn v. Bouchard*, 2017 WL 3048667 at * 1 (E.D. Mich. July 19, 2017).  Rather, the Magistrate Judge's decision is subject to review under Rule 72(a) and reversal when it "is clearly

---

[1] The Court notes that, on May 18, 2026, Benjamin Levi (in his capacity as Trustee of the Eli M. Gunzburg Irrevocable Trust 2010, the Eli M. Gunzburg Irrevocable Legacy Trust 2017, and the Eli Gunzburg Irrevocable Insurance Trust 2018) filed a Motion to Intervene.  (Doc. No. 101.)  Therein, Mr. Levi requests that the Court "allow the above Trusts to intervene and join in this action for the limited purpose of seeking a declaratory judgment that the Trusts and their respective assets are not subject to garnishment, attachment, or execution to satisfy the personal judgment debts of" Gunzburg.  (*Id.*) This Motion remains pending as of the date of this Order.

erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).  *See Bisig*, 940 F.3d at 219; *Alvarado v. Warden, Ohio State Penitentiary,* 2018 WL 5783676 at * 1 (N.D. Ohio Nov. 5, 2018).

The clearly erroneous standard applies to factual findings, while legal conclusions are reviewed under the contrary to law standard.  *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F.Supp.2d 603, 605 (W.D. Tenn. 2009).  As the Sixth Circuit has explained, "'[a] [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Bisig*, 940 F.3d at 219 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "An order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id*. (quoting *United States v. Winsper*, 2013 WL 5673617 at *1 (W.D. Ky. Oct. 17, 2013)).

### B.      Fed. R. Civ. P. 26 and 45

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas.  Under Rule 45(a), parties may command a nonparty to, among other things, testify in deposition and/or produce documents.  Fed. R. Civ. P. 45(a)(1).  Rule 45(c)(2) provides that "[a] subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2).  Rule 45(d)(3)(A) further provides that the issuing court "must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).  In addition, a court may quash or modify a subpoena that requires the

10

disclosure of certain confidential information.  Fed. R. Civ. P. 45(d)(3)(B).  *See United States v. Tenn. Walking Horse Breeders' and Exhibitors Ass'n*, 727 Fed. Appx 119, 123 (6th Cir. 2018) ("A court must protect a non-party subject to a subpoena if it 'requires disclosure of privileged or other protected matter' or the subpoena 'subjects a person to undue burden.'") (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii-iv)).

Rule 26(c) governs protective orders.  That Rule authorizes the Court "for good cause shown" to issue a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order."  *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (internal citation omitted).  "[W]here a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a third party's behalf."  *Diamond Resorts Int'l, Inc. v. Phillips*, 2018 WL 4328257 at *2 (M.D. Tenn. July 16, 2018).  "The burden of establishing good cause for a protective order rests with the movant."  *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001) (citation omitted).  *See also In re Ohio Execution Protocol Litig.,* 845 F.3d at 236.

"District courts have broad discretion over docket control and the discovery process."  *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  Indeed, "'[i]t is well established that the scope of discovery is within the sound discretion of the trial court.'"  *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

III.    Analysis

The Court will address Gunzburg's Objections to Magistrate Judge Greenberg's findings and recommendations regarding his Motions to Quash the Subpoenas directed to the Trusts and to Charles Schwab separately, below.

### 1.      The Trust Subpoena

In the R&R, Magistrate Judge Greenberg first recommends that the undersigned find that Gunzburg waived his right to object to relevance of the discovery requests contained in the Trust Subpoena.  (Doc. No. 96 at PageID#s 1241-1242.)  Judge Greenberg noted that the information sought in the Trust Subpoena "mirrors" several of the Judgment Creditors' Post-Judgment Discovery Requests in the Kentucky Action (i.e., Interrogatory Nos. 3, 4, 5, 7, 9, 15, and 17, and Requests for Production Nos. 1, 4, 6, 7, 11, and 14).[2]  (*Id*.)  Judge Greenberg further noted that, in granting Judgment Creditors' Motion to Compel in the Kentucky Action, Magistrate Judge Edwards found as follows:

> The Discovery Requests are the types of discovery requests permissible under [Fed. R. Civ. P.] 69 because they seek information regarding the existence and whereabouts of Gunzburg's assets and prior financial affairs and transfers of assets relating to Gunzburg. *See, e.g., Miller v. Ability Recovery Servs., LLC,* 2020 WL 2838597, at *2 (S.D. Ohio June 1, 2020). Additionally, though Gunzburg asked for an extension of time to respond to the Discovery Requests, there is no indication that Gunzburg objected to the Discovery Requests. **Because Ginzburg failed to object to the Discovery Requests, he waived his right to dispute the propriety of the discovery sought.** *Id*.

*GPH Louisville Hillcreek, LLC, et al. v. Redwood Holdings, LLC, et al*., Case No. 3:21cv0063 (W.D. Ky.) (Doc. No. 180 at PageID# 4123) (emphasis added).  Magistrate Judge Greenberg "agree[d] with the Western District of Kentucky that, given [Gunzburg's] failure to respond to the discovery requests

---

[2] Compare Post-Judgment Discovery Requests (Doc. No. 93-6) with Trust Subpoena (Doc. No. 85-1 at PageID#s 925-928).

in the Kentucky action, [Gunzburg] has waived his right to object to the relevance of the discovery requests in the [Trust Subpoena]."  (Doc. No. 96 at PageID# 1241.)

Magistrate Judge Greenberg then found that, "even if [Gunzburg] did not waive his objections to the relevance of the requested information, '[i]nformation about trust accounts. . . is relevant to an effort to collect a judgment in order to determine if such accounts are repositories for concealed assets of the judgment debtor.'" (*Id*. at PageID# 1242) (quoting *Wells Fargo Bank, N.A. v. MPC Investors, LLC*, 2011 WL 13552576 at *1 (E.D. Mich. Feb. 3, 2011)).  Judge Greenberg noted that Judgment Creditors had come forward with evidence that, in 2018, Gunzburg and the Trusts had engaged in transactions with each other that "left the Trusts owing [Gunzburg] in excess of $650,000" and, further, that Gunzburg had testified in deposition that he could not remember these transactions or whether or not (or when) he was repaid this amount.  (*Id*. at PageID# 1243.)  Based on the above, Judge Greenberg recommends this Court find that "even if Judgment Debtor had not waived his relevancy objections, the requested information is relevant under the  broad scope of post-judgment discovery."  (*Id*.)   Judge Greenberg further recommends, however, that (1) the Trusts should not be required to respond to the Subpoena until a protective order is in place; and (2) the discovery requests in the Trust Subpoena should be limited to the previous seven years.[3]  (*Id*. at PageID#s 1243-1244.)

### 1.    Waiver

Gunzburg first objects to Judge Greenberg's recommendation that the Court find that he waived his right to challenge the Trust Subpoena.  (Doc. No. 99 at PageID# 1262.)  Gunzburg argues that he "could find no case law permitting one district court to enforce the discovery orders of a

---

[3] Judgment Creditors do not object to either of these recommendations.

separate district court, particularly in the absence of request by the original court." (*Id*.) He maintains that "[d]iscovery in Kentucky was propounded upon Gunzburg, not the Trusts" and argues that "[t]he Trusts should not be penalized for anything Gunzburg did, or failed to do, in the underlying case." (*Id*.)

In response, Judgment Creditors argue that "it is Gunzburg, not the Trusts, who has moved to quash the subpoenas here, and thus the only question presented for the Court is whether Gunzburg has waived objections to the discovery." (Doc. No. 100 at PageID# 1268.)  Judgment Creditors maintain that Gunzburg has clearly done so and that "[t]o hold otherwise would permit the very type of gamesmanship occurring here: Gunzburg has thumbed his nose at the post-judgment discovery directed to him and the Western District of Kentucky's Order requiring him to respond, and refused to provide meaningful information in his post-judgment deposition, while simultaneously impeding Judgment Creditor's efforts to obtain that very same information directly from the source." (*Id.*) Lastly, Judgment Creditors note that "the Trusts could have separately objected to the subpoena issued to them in accordance with Fed. R. Civ. P. 45(d)(2)(B) within 14 days of its issuance" but failed to do so. (*Id*.)

For the following reasons, the Court agrees with Magistrate Judge Greenberg that Gunzburg has waived his right to object to the relevance of the information sought in the Trust Subpoena. Notably, Gunzburg does not contest Magistrate Judge Greenberg's finding that the information sought in the Trust Subpoena (Doc. No. 85-1 at PageID#s 925-928) "mirrors" several of the Judgment Creditors' Post-Judgment Discovery Requests in the Kentucky Action (i.e., at Interrogatory Nos. 3, 4, 5, 7, 9, 15, and 17, and Requests for Production Nos. 1, 4, 6, 7, 11, and 14) (Doc. No. 93-6).  And, indeed, upon its own review, the Court agrees with the Magistrate Judge that there is significant

14

overlap between the documents sought in the Trust Subpoena and information and documents requested in the Judgment Creditors' Post-Judgment Discovery Requests.

Moreover, the record clearly reflects (and Gunzburg does not dispute) that Gunzburg failed, entirely, to object or otherwise respond to Judgment Creditors' Post-Judgment Discovery Requests and/or Motion to Compel in the Kentucky action.  It is, in fact, because of Gunzburg's refusal to respond to the Post-Judgment Discovery Requests that Judgment Creditors felt compelled to issue the Trust Subpoena.  (Doc. No. 93 at PageID# 1111) ("Judgment Creditors have sought to use the subpoenas issued in this action .... to obtain the information that Gunzburg seeks to hide through his refusal to respond to the discovery requests [in the Kentucky Action].")  Under these circumstances, this Court agrees with Magistrate Judge Greenberg that, by failing entirely to object or otherwise respond to the Post-Judgment Discovery Requests in the Kentucky Action, Gunzburg waived his right to object to the relevance of the discovery sought in the Trust Subpoena.  To hold otherwise would reward Gunzburg for his recalcitrance and gamesmanship. [4]

Accordingly, the Court finds that Gunzburg waived his right to object to the relevance of the discovery sought in the Trust Subpoena.  However, as set forth below, even assuming *arguendo* that Gunzburg did not waive his objections to the Trust Subpoena, the Court agrees with Magistrate Judge Greenberg that the documents requested in the Trust Subpoena are relevant and subject to discovery under Fed. R. Civ. P. 69(a)(2).

**2.      Relevance**

---

[4] Gunzburg's argument that "[t]he Trusts should not be penalized for anything Gunzburg did, or failed to do, in the underlying case" is without merit.  As Judgment Creditors correctly note, the Trusts could have objected to and/or filed their own Motion to Quash the Trust Subpoena but failed to do so.

15

Gunzburg next argues that his Motion to Quash should be granted because the Trust Subpoena improperly seeks confidential financial information from non-parties.  (Doc. No. 99.)  Citing a district court case from outside this Circuit, Gunzburg maintains that, in order to obtain this information, Judgment Creditors bear the burden of demonstrating both relevance and a "compelling need" for this information.  (*Id.* at PageID#1262) (citing *Tate v. DG Louisiana, LLC*, 653 F.Supp.3d 316 (E.D. La. 2023)).  Gunzburg asserts that "[i]nstead of placing the burden to show relevancy and a compelling need on [the Judgment Creditors], the Magistrate has shifted the burden to Gunzburg." (*Id.*)  Lastly, Gunzburg argues that the information sought in the Trust Subpoena is irrelevant because the assets of the Trusts are not subject to garnishment under Ohio law.  (*Id.* at PageID#s 1263-1264.)

In response, Judgment Creditors emphasize that the scope of post-judgment discovery under Rule 69 is very broad.  (Doc. No. 100.)  Judgment Creditors maintain that the subpoenaed documents are clearly relevant and subject to discovery, arguing that "courts have specifically identified information about trust accounts as being relevant in post-judgment discovery to determine whether such accounts are 'repositories for concealed assets of the judgment debtor.'"  (*Id.* at PageID# 1270) (quoting *Wells Fargo Bank, N.A.*, 2011 WL 13552576 at*1).  Judgment Creditors maintain that they have demonstrated a need for the subpoenaed documents, noting that they "provided in and with their Omnibus Response significant information concerning known transactions and complicated interrelationships between Gunzburg, the Trusts, and Gunzburg's businesses."  (*Id.* at PageID# 1271.)

Federal Rule of Procedure 69 governs the procedure for enforcing a judgment.  As relevant herein, Rule 69(a)(2) provides that:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a)(2).  As the Sixth Circuit has explained, "[t]he scope of post-judgment discovery is very broad." *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007).  "A judgment creditor is entitled to utilize the full panoply of federal discovery measures provided for under federal and state law to obtain information from parties and non-parties alike." *United States v. Edmond*, 2016 WL 11543254 at *4 (W.D. Tenn. June 27, 2016) (citation and quotation marks omitted).  *See also Andrews v. Raphaelson*, 2009 WL 1211136 at *3 (E.D. Ky. April 30, 2009); *FTC v. Trudeau*, 2012 WL 5463829 at * 4 (N.D. Ohio Nov. 8, 2012).

Indeed, post-judgment discovery plays a crucial role in the execution of a judgment by allowing a judgment creditor "to obtain information ... about assets on which execution can issue or about assets that have been fraudulently transferred." *Iron Workers Dist. Counsel of S. Ohio & Vicinity Benefit Trust v. Matheny & Sons Gen. Contracting, LLC*, 2023 WL 3570605 at 2 (S.D. Ohio May 19, 2023) (quoting *Searcy v. GUUAS, LLC*, 2021 WL 2256220 at *1 (S.D. Ohio 2021)).  *See also Mosby v. Reaves Law Firm*, PLLC, 2026 WL 1032031 at * 1 (W.D. Tenn. April 16, 2026); *Scioto Constr., Inc. v. Morris*, 2007 WL 108906, *2 (E.D. Tenn. 2007).  "While judgment creditors typically cannot compel nonparties to disclose their assets, '[i]nquiry into the assets of third persons is permissible where 'the relationship between [the judgment debtor and third person(s)] is sufficient to raise a reasonable doubt about the *bona fides* of any transfer of assets between them.'" *Trudeau*, 2012 WL 5463829 at * 4 (quoting *Aetna Group USA, Inc. v. AIDCO Int'l, Inc*., 2011 WL 2295137 at *5 (S.D. Ohio June 8, 2011) (citations omitted)).  *See also BR North 223 LLC v. Glieberman*, 2013 WL 6482455 at * 2 (E.D. Mich. Dec. 10, 2013).

Here, the Court agrees with Magistrate Judge Greenberg that the information requested in the Trust Subpoena is relevant and subject to discovery.  As set forth below, in support of their

Memorandum in Opposition to Gunzburg's Motion to Quash the Trust Subpoena (Doc. No. 93), Judgment Creditors provide evidence "sufficient to raise a reasonable doubt about" the relationship between Gunzburg and the Trusts, and "the *bona fides* of any transfer of assets between them." *Trudeau*, 2012 WL 5463829 at * 4.  Specifically, Judgment Creditors provide the following evidence.

In May 2018, Gunzburg provided Judgment Creditors with a "Personal Financial Statement" (or "PFS").  (Doc. No. 93-2 at PageID# 1127.)  Gunzburg's PFS contains two columns reflecting the assets of both Gunzburg and the Frank Gunzburg Succession Trust.  (*Id*.)  Among other things, the PFS reflects that, as of May 2018, Gunzburg had loans receivable from (1) the Frank Gunzburg Succession Trust in the amount of $268,226, and (2) the Eli M. Gunzburg Irrevocable Trust in the amount of $382,256, for a total amount of $650,482.  (*Id*.)   In addition, bank records subpoenaed by Judgment Creditors show that, during the period from March 2019 through September 2020, a total of $96,565.18 was deposited into Gunzburg's personal accounts by the Frank Gunzburg 2015 Succession Trust and Eli M. Gunzburg Irrevocable Trust.[5]  (Doc. No. 93-11.)

During his post-judgment deposition on May 12, 2025, Gunzburg testified that he could not remember how the $382,256 loan from the Eli M. Gunzburg Irrevocable Trust arose, whether it was reduced to a promissory note, when it was repaid, and/or whether it was repaid in a lump sum or over time.  (Doc. No. 93-3 at Tr. 38-39.)  Judgment Creditors subpoenaed Gunzburg's accountants, who provided redacted copies of his personal tax returns from 2018 through 2023.  (Doc. No. 93-10 at PageID# 1200.)  When Judgment Creditors requested unredacted versions, the accountants responded

---

[5]  Gunzburg also testified that "the trust" owned his residence at 25262 Margot Court, Beachwood, Ohio.  (Doc. No. 93-3 at Tr. 13.)  Gunzburg testified that he did not recall which trust owned his residence or how much he paid in rent.  (*Id*.)

that the redactions of information on Gunzburg's tax returns related to "Grantor trusts" and refused

to provide unredacted copies of the tax returns containing this information.  (*Id*. at PageID# 1198.)

Gunzburg does not address the above evidence or otherwise explain why it is not sufficient to

"raise a reasonable doubt about" the relationship between Gunzburg and the Trusts and "the *bona*

*fides* of any transfer of assets between them."  *Trudeau*, 2012 WL 5463829 at * 4.  The Court finds

that it clearly is.  And assuming *arguendo* that the Judgment Creditors bear the burden of

demonstrating a "compelling need" for the subpoenaed documents,[6] the Court finds that they have

more than satisfied their burden.[7]  *See, e.g., Wells Fargo Bank, N.A.,* 2011 WL 13552576 at * 1

("Information about trust accounts .... is relevant to an effort to collect a judgment in order to

determine if such accounts are repositories for concealed assets of the judgment debtor.")

Accordingly, and for all the reasons set forth above, the Court finds that the information

requested in the Trust Subpoena is relevant and subject to discovery.  Gunzburg's Objections (Doc.

No. 99) are without merit and denied.  In addition, and in the absence of any argument to the contrary,

the Court agrees with Magistrate Judge Greenberg that (1) the Trusts should not be required to

respond to the Subpoena until a protective order is in place; and (2) the discovery requests in the Trust

---

[6] The Court notes that the district court decision relied on by Gunzburg, *Tate v. DG Louisiana, LLC*, 653 F.Supp.3d 316 (E.D. La. 2023), is not binding on this Court.  Moreover, *Tate* is distinguishable because it involved pre-judgment discovery, as opposed to the post-judgment discovery under Rule 69(a)(2).

[7] Gunzburg suggests that the Trust Subpoena should be quashed because the Trusts stated in their Answers that they did not have in their control or possession any of Gunzburg's assets.  (Doc. Nos. 53, 54, 55.)  This argument is without merit. In light of the evidence discussed *supra*, the Court finds that Judgment Creditors are entitled to test the credibility of the Trust's Answers in discovery.  *See BR North*, 223, 2013 WL 6482455 at * 3 ("Plaintiff is not bound by Mr. Glieberman's or his children's credibility, and it is entitled to discovery regarding transfers among these entities," in light of evidence of a "clear interconnection" between them).

19

Subpoena should be limited to the previous seven years as of the date of this Order.  The parties shall file a proposed Stipulated Protective Order within seven (7) days of the date of this Order.[8]

### 2. The Charles Schwab Subpoena

In the R&R, Magistrate Judge Greenberg recommends that the undersigned find that the records sought in the Charles Schwab Subpoena are relevant to determining if Gunzburg concealed assets.  (Doc. No. 96 at PageID#s 1246-1247.)  In so finding, Judge Greenberg noted the following evidence presented by Judgment Creditors in their Memorandum in Opposition to Gunzburg's Motion Quash.  (*Id*. at PageID# 1245.)

In his May 2025 post-judgment deposition, Gunzburg testified that Charles Schwab took over an account that he previously had at Ameritrade.  (Doc. No. 93-3 at Tr. 16.)  In his PFS, Gunzburg had reported that this account had over $30,000 as of March 2018.  (Doc. No. 93-2 at PageID# 1127.)  When asked whether he had ever moved money out of that account, Gunzburg testified that did not know and did not remember.  (Doc. No. 93-3 at Tr. 16.)  Judgment Creditors assert that "[r]ecords reflect[] that in December of 2023, $356,483.16 from [Charles Schwab] accounts in the name 'Gunzburg Family LLC' was transferred to [an] account at Huntington Bank and then promptly transferred out of that account the same day, while another $3,600.84 from the same [Charles] Schwab account was transferred to Gunzburg's personal account."  (Doc. No. 93 at PageID# 1117) (citing Doc. Nos. 93-12, 93-13.)  In addition, Judgment Creditors provide evidence that Gunzburg had signing authority over the Huntington Bank account into which the $356,483.16 was transferred.  (Doc. No. 93-13.)

---

[8] The Court notes that it has a strong preference for the Stipulated Protective Order in Appendix L of the Local Rules.

In light of the above, Magistrate Judge Greenberg recommends that the Court find that the records sought in the Charles Schwab Subpoena are relevant and discoverable. (Doc. No. 96.) Judge Greenberg notes that "nowhere in the Motion to Quash does [Gunzburg] assert that, for the [Charles Schwab] accounts in which he is a 'signatory, but not an owner,' he does not receive any financial benefit from such accounts." (*Id.* at PageID# 1247.) Lastly, Magistrate Judge Greenberg recommends that the Court reject Gunzburg's argument that the parties' joint stipulation to return the funds from certain Charles Schwab accounts, forecloses Judgment Creditors' right to seek the requested discovery in the Charles Schwab Subpoena. (*Id.*) Specifically, Judge Greenberg recommends that the undersigned find that "the subpoena to Charles Schwab requests information beyond what was sought in the Order and Notice of Garnishment [] (Doc. No. 16), as the subpoena asks for production of '[a]ll documents relating to any and all of Debtor's accounts with Schwab from January 1, 2019, to present, including, but not limited to, applications, deposits, transfers, withdrawals, transaction logs, account statements, tax statements or tax forms, and account ownership information associated with the accounts.'" (*Id.*) (quoting Doc. No. 86-1.)

Gunzburg objects on numerous grounds. (Doc. No. 98.) Gunzburg first complains that Judgment Creditors "seek[] to expand the request for discovery to not only those accounts in Gunzburg's name, but those [Charles Schwab] accounts for which he is a signatory, whether or not the beneficiary of the account was a party to the underlying litigation." (*Id.*) He argues that, in so doing, Judgment Creditors improperly seek discovery regarding the confidential financial information of third parties, such as his children. (*Id.*) Gunzburg maintains that Magistrate Judge Greenberg improperly found that such confidential information regarding non-parties is discoverable by relying on evidence that substantially predates the instant action. (*Id.*) Gunzburg also asserts that

21

Magistrate Judge Greenberg erred by shifting the burden of proof onto him (i.e., Gunzburg) rather than requiring Judgment Creditors to prove relevancy and a compelling need.  (*Id.*)  Finally, Gunzburg argues that the parties' stipulation at the July 23, 2025 hearing regarding the return of the Charles Schwab accounts, "renders any further discovery moot."  (*Id.* at PageID# 1256.)

For the following reasons, the Court finds Gunzburg's Objections to be without merit.  The Court rejects Gunzburg's argument that the Magistrate Judge improperly shifted the burden of proof onto him, as opposed to the Judgment Creditors.  As an initial matter, the Court notes that Gunzburg not only seeks to quash the Charles Schwab Subpoena but also moves for a protective order under Rule 26(c).  As noted *supra,* "[t]he burden of establishing good cause for a protective order rests with the movant."  *Nix*, 11 Fed. Appx. at 500.  Regardless, the Court finds that, here, Magistrate Judge Greenberg expressly noted and relied upon the fact that the Judgment Creditors had come forward with evidence sufficient to raise a reasonable doubt about "the *bona fides* of any transfer of assets" from and to Charles Schwab accounts in Gunzburg's name and/or over which Gunzburg had signing authority.  *Trudeau*, 2012 WL 5463829 at * 4.

As discussed above, Judgment Creditors have presented evidence that (1) Gunzburg transferred an Ameritrade account to Charles Schwab; (2) over $350,000 from Charles Schwab accounts in the name of "Gunzburg Family LLC" was subsequently transferred to an account at Huntington Bank and then "promptly transferred out of that account the same day;" (3) Gunzburg had signing authority over the Huntington Bank account; and (4) on that same date, $3,600.84 from the "Gunzburg Family LLC" Charles Schwab account was transferred to Gunzburg's personal account.  Gunzburg does not contest that any of the above financial transactions occurred.  Rather, he complains that the above transactions are not relevant because they pre-date the commencement

of the underlying litigation.  The Court rejects this argument.  While the transactions and transfers discussed above appear to have occurred at some point between 2018 and 2023, the Court finds that this is not so remote in time as to render the discovery sought in the Charles Schwab Subpoena irrelevant.  Indeed, the $350,000 transfer from the "Gunzburg Family LLC" Charles Schwab account to the Huntington Bank account over which Gunzburg apparently had signing authority, appears to have occurred in December 2023—i.e., after the bench trial in the Kentucky action and approximately one month before Judge Jennings issued her Findings of Fact & Conclusions of Law.  Under these circumstances, it is not unreasonable for Judgment Creditors to seek discovery regarding any possible transfer of assets that Gunzburg may have made to avoid the potential of an impending unfavorable judgment in the Kentucky action.

In light of the broad scope of post-judgment discovery under Rule 69(a)(2), the Court finds that Judgment Creditors have come forward with evidence sufficient to raise a reasonable doubt about the *bona fides* of any transfer of assets from and to Charles Schwab accounts in Gunzburg's name and over which Gunzburg had signing authority.  *Trudeau*, 2012 WL 5463829 at * 4.  Thus, the Court agrees with the Magistrate Judge that information sought in the Charles Schwab Subpoena is relevant and discoverable.

Lastly, the Court rejects Gunzburg's argument that Judgment Creditors gave up any right to seek further discovery regarding the Charles Schwab accounts in question in light of Judgment Creditors' decision during the July 23, 2025 hearing not to proceed with a garnishment hearing regarding approximately $4,000 in two of Gunzburg's Schwab accounts.  The record reflects that Judgment Creditors stipulated without prejudice to the return of approximately $4,000 in the accounts identified in Charles Schwab's Answer (i.e., Charles Schwab Account Nos. XXXX-5062 and XXXX-

7108.)  (Doc. No. 84 at PageID# 867; Doc. No. 82.)  The Stipulated Order entered by the undersigned on August 1, 2025 is limited to the particular accounts identified in Charles Schwab's Answer.  (Doc. No. 82.)  Moreover, and notably, the Stipulation is without prejudice and provides that "[e]xcept as expressly set forth herein, this stipulation shall not be construed to waive any party's rights, remedies, or defenses or to decide any factual or legal issues." (*Id.* at PageID# 847.)

In light of the above, the Court agrees with Magistrate Judge Greenberg that the Stipulation discussed above does not foreclose Judgment Creditors' right to seek the requested discovery from Charles Schwab.  The Stipulation was limited in nature, without prejudice, and not intended to waive Judgment Creditors' rights and remedies.  Additionally, as Judge Greenberg correctly notes, the Charles Schwab Subpoena (Doc. No. 86-1) is broader than, and seeks information beyond what was sought in, the Charles Schwab Order and Notice of Garnishment (Doc. No. 16).

Accordingly, and for all the reasons set forth above, the Court finds that the information requested in the Charles Schwab Subpoena is relevant and subject to discovery. Gunzburg's Objections (Doc. No. 98) are without merit and denied.

## IV.  Conclusion

Accordingly, and for all the reasons set forth above, Gunzburg's Objections (Doc. Nos. 98, 99) are DENIED and Magistrate Judge Greenberg's Report & Recommendation (Doc. No. 96) is ADOPTED in full.  Gunzburg's Motion to Quash the Charles Schwab Subpoena (Doc. No. 86) is DENIED.  Gunzburg's Motion to Quash the Trust Subpoena (Doc. No. 85) is GRANTED IN PART and DENIED IN PART, as set forth herein.

The parties shall file a proposed Stipulated Protective Order within seven (7) days of the date of this Order.  The Eli M. Gunzburg Irrevocable Trust 2010, Eli M. Gunzburg Irrevocable Trust 2017,

and Frank Gunzburg 2015 Succession Trust shall respond to the Trust Subpoena (as modified herein) within thirty (30) days of the entry of a Stipulated Protective Order in this matter.   Likewise, Charles Schwab & Co., Inc. shall respond to the Charles Schwab Subpoena within thirty (30) days of the entry of a Stipulated Protective Order in this matter.

       **IT IS SO ORDERED.**

                                      *s/Pamela A. Barker*

Date:  May 26, 2026                          PAMELA A. BARKER
U. S. DISTRICT JUDGE